THE CHEMUNG CANAL BANK, Respondent, *v.* LESTER BRADNER, impleaded with LEWIS W. CARROLL, DANIEL LOWREY, and others, Appellant.

As each member of a firm, by virtue of the partnership relation, has authority to bind his firm by all acts and representations apparently within the scope of its business, and to employ an agent with the same authority, the delivery by one partner of a blank draft, signed with the name of his firm as drawer, implies authority in the holder to fill it up and negotiate it, which third persons have a right to rely upon.

If the holder procures a bank to discount such a draft, the fact that it is filled up in the presence of the financial officer of the bank by the holder, who inserts his own name as payee, and that of a firm of which he is a member as drawee, and indorses it himself, before it is discounted, does not show notice to the bank that it is accommodation paper, nor call for inquiry, on the part of the bank, as to the authority of one part-

ner to bind the firm named as drawer. The bank has a right to infer, from the fact of possession by the holder, that he is authorized, as agent of the drawer, to so negotiate the draft for the benefit of the drawer.

Accordingly, upon the following facts, C. delivered to L. a printed form of draft, blank as to amount, date, payee and drawee, signed with the name of C.'s firm as drawer, without the knowledge or consent of his partner and for the accommodation of a firm of which L. was a member. L., in the presence of the plaintiff's financial officer, filled in the blanks with sum and date, inserting his own name as payee and the name of his firm as drawee, indorsed it, and the plaintiff thereupon discounted it. It was afterwards accepted by L.'s firm, which had the benefit of its avails. The plaintiff knew that L. was a member of the firm named as drawee, but did not know that it was accommodation paper, or signed without the consent of C.'s partner. C.'s firm had, in fact, been dissolved a short time previous, but no notice of the dissolution had come to the plaintiff. *Held* (LEONARD, C., *contra*), that the plaintiff was a bona fide holder of the draft as against the partner of C., and the latter was liable thereon.

(Argued May 9; decided September 13, 1871.)

APPEAL from an order of the General Term of the Supreme Court, in the Sixth District, denying a motion for new trial, and ordering judgment upon a verdict rendered in favor of the plaintiff.

This action was brought upon the following draft:

"ROCHESTER, N. Y., *December* 30, 1861.

"$15,000. Ninety days after date pay to the order of D. Lowrey $15,000, value received, and charge to the account of

"BRADNER & CARROLL,

"Hemlock Lake.

"To Messrs. Lowrey, Strang & Co., No. 7 Beaver street, New York."

The draft was accepted by the drawees, payable at the Bank of North America.

Bradner alone defended, and set up the following defences: 1st. A denial of a copartnership of himself and Carroll at the date of the draft; also a denial that as copartners they made the draft and a denial of knowledge or information sufficient to form a belief as to all the other allegations in the complaint. 2d. That Carroll signed the name of Bradner & Car-

roll to a blank piece of paper and delivered the same to D. Lowrey, who presented the same to John Arnot, the financial officer of the plaintiff, and in his presence, with his knowledge, wrote over the signature the draft in question, and the same was then received and discounted by the plaintiff for the benefit of Lowrey, Strang & Co.; that the signature was made and delivered without the knowledge or authority of Bradner, and the draft was made and used solely for the accommodation of Lowrey, Strang & Co., of all which the plaintiff at the time it received the draft had notice.

The action was brought to trial at the Chemung circuit in 1864, and upon the trial the following among other facts were proved: That the firm of Bradner & Carroll, composed of the defendants Lester Bradner and Lewis W. Carroll, had been in existence for some years prior to October, 1861, doing an extensive business at Hemlock Lake in buying wool and merchandise; that Carroll was the active member of the firm; that plaintiff had knowledge of the existence of the firm; that the firm was dissolved in October, 1861, but no notice of the dissolution was given and the plaintiff had no knowledge of it; that a short time before its date Carroll signed the draft in blank as follows:

"$      .    .                    "ROCHESTER, N. Y., 1861.
                         pay to the order of
dollars, value received, and charge to account of
                    "BRADNER & CARROLL,
                         "Hemlock Lake, N. Y."
"To

and delivered it to David Lowrey, who was a member of the firm of Lowrey, Strang & Co., for the accommodation of that firm, without the knowledge or consent of Bradner, and the firm of Bradner & Carroll had none of the proceeds of the draft and no benefit therefrom; that Lowrey took this blank to the plaintiff's banking house, and there in the presence of its financial officer filled it up, as it now appears, and the plaintiff discounted it, paying full value therefor, without having

any knowledge or information that it was an accommodation draft, or that it was signed by Carroll without the consent of Bradner; that the plaintiff knew that Lowrey, the payee of the draft, was a member of the firm of Lowrey, Strang & Co.

At the close of the evidence the defendant's counsel moved that the plaintiffs be nonsuited on the following grounds:

1st. The evidence establishes that the draft in question was drawn by Carroll, in the name of Bradner & Carroll, for the accommodation of Lowrey, Strang & Co.; and that such being the fact, Mr. Bradner is not liable upon it, without evidence that he assented to the use of the name of Bradner & Carroll for the making of the draft; that the presenting of the draft to the plaintiff for discount, by Lowrey, one of the acceptors, and the receipt of the money by him, was notice to the plaintiff of the accommodation character of the paper.

2d. The evidence establishes that the draft in question, when presented to the plaintiff, was wholly in blank; that it was presented by one of the firm of Lowrey, Strang & Co.; hence it was not taken in the ordinary course of business, and these facts impose upon the plaintiff the burden of proof that Mr. Bradner assented to the use of the name of Bradner & Carroll thereon.

3d. That the partnership of Bradner & Carroll had been dissolved before the signatures were made to the draft in question.

4th. That it was not competent for Carroll to delegate to a third person authority to fill up the draft for any amount, so as to bind his copartner.

The court denied the motion, to which decision defendant's counsel excepted.

The plaintiff's counsel then asked the court to direct a verdict for the plaintiff for the amount of the draft and interest, and the defendant's counsel asked the court to submit several questions of fact to the jury. The defendant's counsel also asked the court to decide, that the fact of the signature being in blank when handed to Mr. Arnot was notice to him of the want of authority of one of the partners to make the paper,

· and charged him with notice of any defence which existed in favor of Mr. Bradner; which was refused by the court, and the defendant's counsel excepted.

The court thereupon directed the jury to render a verdict in favor of the plaintiff for $17,557.91, to which direction of the court defendant's counsel excepted.

The jury thereupon rendered a verdict for the plaintiff as directed, and the court ordered the motion for a new trial, upon a case and exceptions, to be heard in the first instance at the General Term. The motion having been made and denied, and judgment entered for the plaintiff, Bradner appealed to this court.

*Henry R. Selden,* for the appellant, cited *Bank of U. S;* v. *Davis* (2 Hill, 461); *North River Bank* v. *Aymar* (3 id., 263, 274–5); *Fulton Bank* v. *Benedict* (1 Hall., 481, 557); *The N. H. & Del. Bridge Co.* v. *The Phœnix Bank* (3 Comst., 156, 164–5); *Smith* v. *South Royalton Bank* (32 Verm., 342, 352); *Bank of Rochester* v. *Bowen* (7 Wend., 158, 160); *Hatch* v. *Searles* (2 Smale & Giffard, 147); *Bank of Vergennes* v. *Cameron* (7 Barb., 144–150); *Powell* v. *Waters* (17 John., 176); S. C., in error, 8 Cowen, 669, 687, 697, 705; *Smith* v. *Wyckoff* (3 Sandf. Ch. R., 77); *Howard Ins. Co.* v. *Halsey* (4 Sandf., 577–8); *Brown* v. *Williamson* (15 N. Y., 354–364); *M. & F. Bank* v. *Schuyler* (7 Cow., 337, note); *Violett* v. *Patton* (5 Cranch, 142); S. C., 2 Peter's Cond. Rep., 214–216); *Van Duzen* v. *Howe* (21 N. Y., 531, 535); Collyer on Partnership, § 421, and notes. *Foote* v. *Sabin* (19 John., 157, 158); *Laverty* v. *Burr* (1 Wend., 531); *Joyce* v. *Williams* (14 Wend., 144); *Gansevoort* v. *Williams* (id., 133, 138, 139); *N. Y. F. Ins. Co.* v. *Bennett* (5 Conn., 579, 580, 581); *Sweetzer* v. *French* (2 Cush., 313, 314); *Bank of Rochester* v. *Bowen* (7 Wend., 159); *Boyd* v. *Plumb* (id., 310); Collyer on Partnership, § 195); Lindley on Partnership, 102 Law. Lib., 192; *Com. Bank of L. E.* v. *Norton* (1 Hill, 501, 505); *Emmerson* v. *Prov. Hat Manuf. Co.* (12 Mass., 237, 241, 242); 2 Kent's Com., 633;

Chitty on Bills, 37; *Mitchell* v. *Culver* (7 Cow., 336); *Putnam* v. *Sullivan* (4 Mass., 54, 55); *Whitney* v. *Snyder* (2 Lans., 477.)

*George F. Danforth,* for the respondent, cited *Stall* v. *Catskill Bank* (18 Wend., 478); *Temple* v. *Seaver* (11 Cushing, 314); *Thayer* v. *Buffum* (11 Metcalf, 398); *Pitcher* v. *Barrows* (17 Pick., 361); *Smith* v. *Lusher* (5 Cowen., 688); *Johnson* v. *Negley* (25 Penn., 297); *Babcock* v. *Stone* (3 McLean, 172); *Sherwood* v. *Barton* (23 How. Pr. Rep., 533); *Vail* v. *Heustis* (14 Indiana, 607); *Michigan Bank* v. *Eldred* (9 Wallace, 544); *Van Duzen* v. *Howe* (21 New York Rep., 531); *Smith* v. *Insurance Co.* (25 Bar., 407); *Exchange Bank* v. *Monteath* (26 N. Y., 513); *White* v. *V. & M. R. R. Co.* (21 How. U. S., 575); *Brainard* v. *N. Y. C. & H. R. R.* (25 N. Y., 496); *Chauncey* v. *Arnold* 24 N. Y., 332); *Montague* v. *Perkins* (22 Eng. Law. & Eq., 516); *Kitchen* v. *Place* (41 Barb., 465); *M. & F. Bank* v. *Schuyler* (5 Cowen, 337a); *Goodwin* v. *Simmons* (20 Howard, U. S., 361); *Russell* v. *Langstaff* (2 Douglass, 514); *Violett* v. *Patton* (5 Cranch, 142); 2 M. & S., 90; *Putnam* v. *Sullivan* (4 Mass., 54); *Collins* v. *Emmett* (1 H. Blackstone, 313); *Mitchell* v. *Culver* (7 Cowen, 336); 2 Parsons on Bills, 279; *Hall* v. *Wilson* (16 Barb., 548); *Magee* v. *Badger* (30 Barb., 246); *Murray* v. *Lardner* (2 Wallace, 116); *Griswold* v. *Haven, et al.*, 25 N. Y., 595); *Exchange Bank* v. *Marbeth* (26 N. Y., 505. Opinions by DAVIS and BALCOM, JJ., and cases there cited); *North River Bank* v. *Aymer* (3 Hill, 262); *City Bank* v. *McVersey* (20 N. Y., 240); *City Bank* v. *Dearborn* (20 N. Y., 244); *Pratt* v. *Page* (32 Vermont, 13); *Martin* v. *Searles* (28 Conn., 43); *Vernon* v. *Manhattan Co.* (22 Wend., 183.)

EARL, C. As no notice was given, in any way, of the dissolution of the firm of Bradner & Carroll, this draft must be treated as if made by Carroll before the dissolution.

Carroll was the active member of the firm, and had autho-

rity to make notes and draw drafts in the business of the firm; but not for the accommodation of other parties. If, however, he made such paper for the accommodation of other parties, the firm would be liable upon the paper to a *bona fide* holder thereof for value.

This has long been settled, and is undisputed. This rule of liability does not rest upon the actual authority which the member who signs the firm name has, but upon the principle that, where one of two innocent parties must suffer from the improper act of a third person, the one must suffer who has clothed such third person with such character and placed him in such position as enabled him to do the act. (*Hern* v. *Nichols*, 1 Salk., 289; *Griswold* v. *Haven*, 25 N. Y., 595; Story on Part., § 108.) Bradner had held out Carroll as his partner, and, as such partner, he was the general agent of the firm as to all matters within the scope of the partnership business. Hence, the learned counsel for the appellant concedes that, if Carroll had himself filled up this draft and delivered it to Lowrey, Bradner would, upon the facts of this case, have been liable. He also concedes, within the cases of *Russell* v. *Langstaffe* (2 Doug., 514); *Mitchell* v. *Culver* (7 Cow., 337); *Goodman* v. *Simons* (20 How. [U. S.], 361); *Van Duzer* v. *Howe* (21 N. Y., 531); *Violett* v. *Patton* (5 Cranch, 142); *Putnam* v. *Sullivan* (4 Mass., 54), that, if Lowrey had taken this blank and filled it up before he went to the bank, and there got it discounted, the firm would have been liable upon it. In such a case, the bank would have taken the paper as a complete negotiable bill of exchange, and would have had the protection of a *bona fide* taker of such paper. But he claims that, when this blank was taken to the bank, it was not a bill of exchange, nor a contract of any kind; and, hence, that the bank was bound to take notice of the manner of its origin, of the extent and nature of Lowrey's authority, and, in fact, that it was accommodation paper. I cannot doubt that this claim, to its full extent, is without proper foundation.

As before stated, Carroll was the general agent of the firm, and could bind it, by all acts and representations, apparently

within the scope of the business of the firm.  He could bind the firm not only by his own acts and representations, but he could employ an agent who could do the same thing.  In *Stall* v. *Catskill Bank*, 18 Wend., 466, the action was upon a promissory note for $1,000, drawn by one Edward Shook to the order of J. I. Stall & Co., a firm composed of Stall, Traver and Teats; and Teats, for the accommodation of Shook, indorsed the firm name upon it, without the knowledge or consent of Stall.  Shook sent the note to one Outwater, requesting him to get it discounted at the bank. Outwater sent an agent of the name of Reynolds to the bank for that purpose, and it was not discounted.  A day or two afterward Traver desired Reynolds to offer the note again for discount at the bank, and requested him to represent that the note was to be discounted for the firm, to buy grain, and he presented the note, made the representation, and got the note discounted, and Shook had the proceeds. Upon these facts, the firm was held liable.  Chancellor WALWORTH, in his opinion, says: " So far as the rights of the plaintiff were concerned, Reynolds was the agent of the firm for the purpose of getting the note discounted, although Traver was practicing a fraud upon his co-partner, Stall, as well as upon the bank.  The firm are bound by all the representations made by such agent, in connection with the objects of his mission, to the same extent that all the defendants would have been bound if Traver had been there himself, and had made the same representations as a member of the firm."  Here the firm was held bound by the false representations of an agent employed by one member of the firm, apparently, but not really, in the business of the firm.

In this case, Carroll had authority to borrow money for the firm.  He could do it in person or by an agent, and for that purpose he could entrust an agent with notes properly filled up or in blank.  The agent could fill up the blanks, make representations in reference to them, and borrow money upon them, and the firm would be bound, whether the money came to its possession or not.  What difference can it make if the

blanks are filled up in the presence of the lender? When the blanks are delivered to the agent, within the case of *Russell* v. *Langstaffe* and other cases above cited, he is clothed with authority to fill them up and negotiate them, and for that purpose is constituted the agent of the firm, and no one doubts that the firm would be bound if all this is done in its business. But the firm is equally bound, if it is apparently in its business, unless the person dealing with the agent has in some form notice, or what is equivalent to notice, of his want of authority to bind the firm.

Here Lowrey went to the bank with the blank draft signed by the firm name, and he carried with him, by the possession of the blank, an authority from the firm, just as plain and full as if it was fully written out in a separate paper, to fill up the draft for $15,000 and negotiate it to the bank. What notice had the bank of any defect in his authority? There was nothing in the blank or in the circumstances of his possession of it to show that it was made for his accommodation.

The natural inference was, either that the drawers desired to transfer to him so much money due them from the firm of Lowrey, Strang & Co., or that they desired him to raise for them that amount of money upon the draft. There was no occasion for the bank to make any inquiry, for here was in law a representation of the firm, and of its agent, that he was authorized, and the bank had a right, without further inquiry, to rely upon it. As Lowrey was authorized, in the name of the firm, by Carroll, to fill up this blank, his act must have the same force and effect as if it had been done by Carroll himself, in which case it cannot be disputed that the firm would have been bound. (*Michigan Bank* v. *Eldred*, 9 Wallace, 544, 552.)

There is nothing so extraordinary in the fact that Lowrey was entrusted with this blank, as to put the bank upon inquiry, for it is an ordinary commercial transaction for an agent or subordinate to be entrusted with such paper, to negotiate and raise money thereon.

I hold the firm to be liable, not upon principles exclusively

applicable to negotiable paper, but upon principles regulating the relations of principal and agent; Lowrey, as I claim, being authorized, as to the plaintiff, to do precisely what he did in filling up the blank draft in the apparent business of the firm.

The conclusion which I have thus reached is sustained by principles of law well settled, and is in conflict with no authority, unless it be the case of *Hatch* v. *Searles* (2 Smale & Giffard, 147), cited by the learned counsel for the appellant. I have not access to a full report of that case. It seems to have been an action upon a draft, which was accepted while in an imperfect state; and Vice-Chancellor STUART, in his opinion, says: "If the holder has notice of the imperfection, he can be in no better situation than the person who took it in blank, as to any rights against the acceptor or indorser who gave it in blank."

This entirely ignores the doctrine of agency, as applied to such a case. An agent can frequently give rights to a third party, which he himself could not enforce against his principal. Lowrey could not, in this case, have filled up the draft and enforced it against the firm; but he came to the bank with what the law recognizes as authority, given in the name of the firm by Carroll, a member thereof, to fill up the blank and negotiate the draft; the whole transaction being one which it was competent for Carroll and Lowrey to do, just as they did it, in the proper business of the firm, and hence being one apparently within the scope of the partnership business. In such case, it cannot be doubted that Lowrey could confer upon the plaintiff a right to hold the firm, which he could not have. Hence the case cited appears to be unsound in principle, and does not impair the confidence I feel in the conclusion I have reached.

The judgment must be affirmed, with costs.

For affirmance, EARL and HUNT, CC., and LOTT, Ch. C. LEONARD, C., was for reversal; GRAY, C., not sitting.

Judgment affirmed, with costs.

NÓTE. — See *Bank of Commonwealth* v. *Mudgett* (*ante*, p. 514) as to the effect of publication of notice of dissolution to limit the liability of partners upon paper subsequently discounted, on the credit of the firm name, by a bank which has had prior dealings with the firm ; also as to the effect of an indorsement by one partner, in the name of the firm, in the presence of the financial officer of the bank, before discount.—REPORTER.

REMAINDER OF THE SEPTEMBER TERM WILL BE REPORTED IN A SUBSE-
QUENT VOLUME.