Landon, J.
The plaintiff sought to recover $120 upon a written lease and contract signed by him and by the defendant Burke in the firm name of Burke & Collins. The defendants were co-partners doing business at Chateaugay under that firm name, as dealers in hay and country produce, including butter. By the terms of the contract the plaintiff leased to the firm a cheese factory, for seven months for the rent of $100, sold them some ice in the factory for twenty dollars, the defendants agreeing to pay the rent and the price of the ice. The plaintiff also agreed to put the factory in running order on or before May 1, 1882, which was the day the term of hiring began, the de *309 fendants to pay fifteen dollars toward the expense of repairs. The plaintiff made some repairs and notified the defendant Burke that the factory was in order. Burke took possession and operated the factory for a few days and then abandoned it.
The separate answers of the defendants deny that the contract was made by the firm or in its business, and allege that it was the individual contract of Burke. Burke’s answer alleges that he abandoned the factory because it was not placed in running order, and that he suffered damage thereby in the sum of $200. The verdict was for the defendants.
One of the questions in issue upon the trial was, whether the defendant Collins, was bound by the contract. Both defendants testified to the effect that it was not a firm transaction, and evidence was given showing the character of the business of the firm, for the purpose of showing that it was not within the scope of their general business. The plaintiff testified in substance that he accepted the contract in good faith supposing it to be a firm transaction. He also introduced testimony tending to show that Collins offered to settle for the rent and otherwise recognized and ratified the transaction. Collins denied that he offered to settle for the rent, and explained the circumstances by alleging that he did not know that the lease existed.
The court in charging the jury referred to the question of ratification and said, “There are some circumstances proved that tend in that direction, but they have been so explained that I do not think that the jury could be asked to find that they amount to a ratification.” To this portion of the charge the plaintiff excepted. We think the exception well taken. The case upon this question stood thus—the circumstances tended one way and the explanation another, and the court instructed the jury how to decide upon the conflict in the opposing tendencies of the evidence. If the jury had been at liberty to decide this controverted question of fact according to their own judgment, possibly, under all the circumstances they would not have believed the explanation, and if they had believed it, they might not have concluded that it preponderated over the weight of the facts tending to show a ratification. The testimony of the defendants was given under such circumstances of interest as rendered it proper for the jury to pass upon its truth as well as its effect.
Subsequent to the making of the contract the defendant Burke employed one, Hyde, to operate the factory. The defendants were allowed to prove by him that Burke said nothing to him about Collins having anything to do about the factory, and that his employment was not in the name *310 of the firm. This was clearly error. The contract of plaintiff could not be construed to his prejudice by reason of Burke’s acts after it was made.
Touching the scope of the business of the firm, the defendants were permitted to give evidence of a card inserted in a newspaper, without giving any evidence tending to show that it was brought to the plaintiff’s notice. Also that the firm had never leased any other butter factory, and that Burke had sometimes giving his firm’s check in his individual business. The plaintiff could not be prejudiced by any of these acts, unless he had notice of them.
It was competent for the plaintiff to ask the defendant Collins if, in July following the making of this contract, he ascertained that the assets of the firm were insufficient to pay its debts. It called for a matter proper to be considered as possibly influencing his repudiation of this contract.
Burke gave a firm check to Mr. Hyde in payment of his services in the factory. It was competent for the plaintiff to ask Collins if he furnished the money to pay that account.
As there must be a new trial, a few suggestions are added.
Here the actual business of the firm was dealing in country producé, including butter. Whether the firm should engage in the manufacture of butter, and for that purpose hire a factory, was a matter for them to determine, and if the defendant, in making this contract, represented to the plaintiff that he hired this factory for the firm, and the plaintiff, in- good faith, acted upon that representation, Collins was bound by the contract. Chemung Canal Bank v. Bradner, 44 N. Y., 680,
If, however, the plaintiff had notice that Burke was acting for himself, and not for the firm, and the contract was not adopted by Collins as a firm contract, then Burke, who used the firm name without authority, only bound himself, and thereby became severally liable. Because of such several liability, a several judgment could pass against him in this action, unless he made good his separate defense.
The defendants or Burke, having entered into possession of the premises, became liable, upon the agreement, to pay rent. La Farge v. Mansfield, 31 Barb., 345.
If the plaintiff failed to put the premises in running order he was liable for damages upon his breach of his agreement to do so. Cooke v. Soule, 56 N. Y., 420.
The damages in such case would be, in case the tenant did not himself make the repairs, the difference in the value of the use of the premises as they were and as the plaintiff had agreed to put them. Id.
*311 Burke saw the factory before the lease was made, and entered into the lease relying upon the plaintiff’s agreement to make repairs. He was not by deceit entrapped into making the lease or into taking possession under it.
There may be cases in which the landlord leases a house which from causes not observable upon ordinary inspection, and which the landlord conceals, is wholly unfit for occupation; the tenant upon discovery of this fraud may rescind his contract and abandon the premises. Wallace v. Lent, 1 Daly, 481. See Cesar v. Karutz, 60 N. Y., 229.
Here there was no defect not visible upon inspection, and no case was presented allowing the defendants to rescind after entering into possession.
There was no defense to the claim for the price of the ice, this was sold, not leased.
Judgment reversed, new trial granted, costs to abide the event.
Learned, P. J., concurs; Bocees, J., concurs in the result.