### JOHNSON *v.* MON LEE *et al.*

(*City Court of New York, Trial Term.* April 8, 1890.)

PARTNERSHIP—POWER OF PARTNER TO BIND FIRM.

Where a partner is designated on the cards of the firm as "general manager," opens bank accounts in behalf of the firm, and appears to be the leading partner, it cannot be objected, in an action on a note indorsed by such member in the firm name, that he was forbidden by the articles of partnership to make the indorsement, where plaintiff denies that he knew of the restriction in the articles, which were in the Chinese language, and the proceeds of other similar notes discounted by plaintiff are traced to banks in which the firm accounts were kept.

Action by Seth R. Johnson against Mon Lee and others, on a note for $1,980.34, subject to credits aggregating $179.80, leaving a balance due of $1,800.54. It was made in the firm name of Mansingson & Co., to the order of said firm, and indorsed by Mansingson & Co., Chu Fong, Quong Hong Luong & Co. There was also a waiver of protest and notice. The names Mansingson & Co. and Quong Hong Luong & Co. were put upon the note by Chu Fong, who was a member of both firms. The defense is that the note is a forgery by Chu Fong, at the procurement of the plaintiff, without consideration, and without the knowledge or consent of the firms whose names appear as parties, and for the purpose of defrauding them, and that Chu Fong, as a member of Mansingson & Co., was forbidden to make such indorsements by the articles of copartnership, which provide that no member of said firm shall enter into any such obligation without the consent of all other members thereof first had and obtained. The note in suit brought to a close a series of transactions had between the plaintiff, on the one hand, and Chu Fong upon the other, in the course of which large numbers of notes, purporting to have been made by Chinese firms and individuals, were discounted by the plaintiff, and it was claimed by the defendants that these transactions were so interwoven, one with the other, by renewed notes and otherwise, that it was impossible to consider one without investigating all. Defendants contend that Chu Fong was ignorant of business methods and of crime; that the plaintiff instructed him in the art of forgery. All this was denied by plaintiff, who contends the note was given to take up other notes of the firm of Mansingson & Co., the makers, and Quong Hong Luong & Co., the indorsers, and that he knew of no restriction on the power of Chu Fong, a partner in both of said firms, to execute said instrument.

*Edward C. James,* for plaintiff.   *W. C. Beecher & B. T. Morgan,* for defendants.

McADAM, C. J.   Chu Fong, the individual who figures most prominently in the various transactions with the plaintiff, is an intelligent Chinaman, with a fair knowledge of English. He was a member, not only in the firm of Mansingson & Co., but Quong Hong Luong & Co. His partners had every

faith in him up till about the time he broke off his transactions with the plaintiff, when his partners for the first time charged him with wrong-doing, and caused his arrest as a criminal. That he may have wronged them is true; but the question to be determined is whether the consequences of his acts are to be borne by them or visited upon the public. That he entered into an alliance with the plaintiff to ruin the two firms of which he was a member is highly improbable, to say the least. Neither he nor the plaintiff could be benefited by such a consummation. That the plaintiff instructed Chu Fong in the art of forgery, or furnished him with a book of signatures, and taught him to make notes in the names of his own and other firms, is still more improbable. That Chu Fong became the pliant tool of the plaintiff, and forged notes bearing the names of Chinese firms, which the plaintiff, knowing all the facts concerning them, took to his bank, had discounted on his own responsibility, gave Chu Fong checks for the amounts of the discounts, had him draw the money, and hand it back to the plaintiff, is too unlikely to invite belief. The books of the bank and the plaintiff's deposit book show the discounts and the checks given to Chu Fong, but show no return of the money to the plaintiff or to his credit. The checks, when traced, show that the money was not returned to the plaintiff. Indeed, a large portion of the proceeds found their way to the Bowery Bank, in which Chu Fong had opened accounts in the names of the two firms, and made deposits to their credit. These, and like circumstances, convince me that the plaintiff is a *bono fide* holder for value, without notice of any infirmity in the notes or his title to them. The act of Chu Fong in willfully misrepresenting the purchase price of the Brooklyn property, in lying about the Pell-Street property, and the Kearsing notes, and fraudulently imposing on Mr. Brownell, clearly demonstrate that he is not to be believed. A man that will willfully and fraudulently lie as to one thing, cannot inspire confidence in his declarations. Chu Fong claims that he was the fool,—the plaintiff, the knave; that, at the time both, were engaged in a conspiracy, he thought it lawful, while the plaintiff knew the contrary; that, though he perpetrated the acts of forgery, the plaintiff got all the money, and kept it. Chu Fong asks the court to believe too much. His story is unreasonable, inherently improbable, and, viewed in the light of his conduct, wholly unreliable. The claim that the plaintiff first schooled Chu Fong into a knowlege of making notes is negatived by the fact that the first note was filled up by a clerk in Howe & Hummel's office. That firm was his attorneys at the time, and so, all through the case, are circumstances, small in themselves, but significantly strong when put together, tending to discredit Fong. In short, the evidence, carefully considered, justifies the conclusion that Fong is what his partners have termed him,—a criminal. The plaintiff was indiscreet in making so many discounts without consulting the other members of Fong's firms; but indiscretion is not crime, and want of judgment not evidence of bad faith. A little wisdom would have told the plaintiff that no man could pay 60 per cent. a year for the use of money, and last long. At this rate, money doubles itself in one year and eight months. The plaintiff swears that he took Fong's statement in regard to the parties to the notes before discounting them; that Fong explained the financial standing of each to every note he gave, told why they needed the money, and how they could pay it back, and why they could pay the large interest exacted, and still make money. It would seem that, led on by the temptation of 5 per cent. a month for the use of money he obtained from his bank at 6 per cent. a year, the plaintiff was lured into discounts, till, at the close of the transactions, there was, as he swears, a loss to him of about $15,000. Usury is not pleaded, and that feature of the case need not be considered.

The defendants' evidence that the plaintiff was advised of the restriction upon the powers of any of the partners of Mansingson & Co. to execute promissory notes or other obligations is indefinite. The agreement containing the

limitation was written in Chinese characters, which the plaintiff could not read, and there is no claim that he was even shown a translation of it. The plaintiff denies that he had knowledge or notice of the condition, and, upon the evidence, I find he had no information in respect thereto. The provisions of the partnership articles, limiting the ordinary powers of the partners, although binding on them, do not affect the plaintiff, who dealt with the partner with notice thereof. Private instructions or limitations only charge those in the secret, and not the general public. 2 Lawson, Rights & Rem. § 647. The partners of Chu Fong deny any knowledge that he opened a bank account in their names, or that he was having firm paper discounted. On these features of the case it will be found that some of the checks on the Bowery Bank contain the picture of a Chinaman and the printed name of "Mansingson & Co.," and on the cards of the firm appeared the name of Chu Fong as "general manager." He was evidently the leading man in both firms. Next it appears that notes were issued by Chu Fong in the firm names to people other than the plaintiff, and these were, upon inquiry, found to be sanctioned by other members of the firm. But whether the defendants had knowledge or notice is not necessary to charge them. Chu Fong was a member of both firms, and, as such, the accredited agent of each. They held him out to the world as worthy of confidence, and are liable for his misconduct. The liability of a firm for the fraud of one of its members in procuring money upon false pretenses is sustained by several authorities: *Rapp* v. *Latham*, 2 Barn. & Ald. 795; *Stall* v. *Bank*, 18 Wend. 466; *Bank* v. *Aymar*, 3 Hill, 262; *Griswold* v. *Haven*, 25 N. Y. 595; *Bank* v. *Bradner*, 44 N. Y. 680; *Chester* v. *Dickerson*, 54 N. Y. 1; *Bradner* v. *Strang*, 89 N. Y. 299. See, also, the following authors: Colly. Partn. (Perk. Ed.) §§ 445, 447; Lindl. Partn. (Ewell's 2d Amer. Ed.) 150; 2 Lawson, Rights & Rem. § 650; Story, Partn. § 108. Judge Story, in his work on Partnership, says: "This whole doctrine proceeds upon the intelligible ground that, where one of two innocent persons must suffer by the acts of a third person, he shall suffer who has been the cause or occasion of the confidence and credit reposed in said third person." Section 108. Mr. Collyer places the language of Judge Story at the head of the section in which he treats of this class of liabilities, and expressly applies the principle to the case of negotiable securities fraudulently issued by one of the partners. Sections 445, 447. Mr. Lindley also places the liability upon the same ground, and illustrates it by the case of *Rapp* v. *Latham*, *supra*. This principle has been applied where firms were not the recipient of the money fraudulently obtained. *Griswold* v. *Haven*, 25 N. Y. 595; *Bank* v. *Bradner*, 44 N. Y. 680. And in the case of agency it was applied where neither the principal nor agent received any benefit from the fraud, but were in fact the victims of it. *Armour* v. *Railroad Co.*, 65 N. Y. 111; *Bank* v. *Railway Co.*, 72 N. Y. 188; *Bank* v. *Railroad Co.*, 106 N. Y. 195, 12 N. E. Rep. 433. In cases where the firm has received the benefit of the fraud, the innocent partners have always been held liable. *Chester* v. *Dickerson*, 54 N. Y. 1, 11; *Bradner* v. *Strang*, 89 N. Y. 299; affirmed 114 U. S. 555, 5 Sup. Ct. Rep. 1038; *Rapp* v. *Latham*, 2 Barn. & Ald. 795. In this case the firm or principal is estopped from denying the authority of the partner or agent to issue the false instrument. *Bank* v. *Aymar*, 3 Hill, 267, 268; *Farmers', etc., Bank* v. *Butchers', etc., Bank*, 16 N. Y. 135–137; *Griswold* v. *Haven*, 25 N. Y. 602. In *Bank* v. *Aymar*, *supra*, it is laid down that where an agent executes an instrument in the name of his principal, purporting to act by authority, such act is equivalent to an express declaration that the instrument is executed in the business of the principal, and for his benefit, and the latter is estopped to deny that the authority has been pursued. In *Farmers', etc., Bank* v. *Butchers', etc., Bank*, *supra*, SELDEN, J., says: "The giving of a note in the partnership name by one of the partners is a virtual representation that it is given in the partnership business, and, if negotiable, this representation is

deemed in law to have been made to every subsequent *bona fide* holder of the note." In *Griswold* v. *Haven, supra,* SELDEN, J., says: "The mere assumption by a partner or agent of power to execute such paper is a virtual representation to all who may take it of the existence of every fact essential to the powers."

So far as the plaintiff is concerned, the apparent authority of Chu Fong was the real authority, and binds his partners. The presumption of law is that all commercial paper which bears the signature of the firm executed by one of the partners, is the paper of the partnership. The burden of proof is on the firm to show the want of authority of the partner, and it will then devolve on the plaintiff to show that he is a *bona fide* holder for value. 5 Wait, Act. & Def. 129; Cow. Treat. § 200. Indeed, it may be regarded as settled that a promissory note made by one partner in the firm name, though outside the partnership business, and without the knowledge or consent of the other partners, is binding on the firm in the hands of a *bona fide* holder for value. *Bank* v. *Morgan,* 73 N. Y. 593. A partner may likewise secure a firm note not yet due by issuing new notes to enable the creditor to bring a suit thereon at once. *Nealis* v. *Adler,* 19 Abb. N. C. 385. And where one is a member of several firms, he may draw and indorse the same paper as the representative of each. *Miller* v. *Bank,* 48 Pa. St. 514. The fact that the plaintiff filled up the note after it was signed, does not impair or vitiate it, or deprive it of negotiable qualities. *Bank* v. *Bradner,* 44 N. Y. 680; and see *Harris* v. *Berger,* 15 N. Y. St. Rep. 389. Upon the entire case the plaintiff is entitled to judgment for $1,800.54, with interest, aggregating $1,841.56, with costs.