Louis L. Friedman, J.
Plaintiff moves for summary judgment in an action based upon a promissory note. Plaintiff contends that it is a holder in due course and that the defenses and facts submitted by the defendants, may not be chargeable to this plaintiff.
The note in question was given by the defendants to the Amalgamated Construction Co., Inc., hereinafter designated as Amalgamated. It was purportedly given in payment of an obligation which arose under a contract made by the defendants with the said Amalgamated for certain improvements on the home owned and occupied by said defendants. The defense herein interposed, in substance, urges that they did not know that they were signing any such thing as a note and assumed that the only papers which they signed were a contract, and in addition, that the contractor had never completed the work which he was required to do under the terms of his contract.
It appears from the papers before the court, that as between the contractor and the defendants, there is sufficient to indicate that defendants were probably defrauded. The attorney for the defendants submits an affidavit in opposition to the present motion for summary judgment in which he points out to the court that he now represents some eight families, all residing in the same vicinity, and each of whom seems to have been the victim of the machinations of Amalgamated. But whatever defenses would exist if the claim here was made by Amalgamated, such defenses may not be asserted as against the present plaintiff, the holder in due course of this note.
Despite the voluminous affidavits submitted in opposition to this motion, there is nothing before the court which indicates that the plaintiff had any knowledge of any of the alleged infirmities existing in the instrument sued upon. Although defendants claim that Amalgamated never finished the work, there is annexed to the moving papers a photostatic copy of a completion certificate dated May 6, 1955 signed by the defendant Victoria Tomassone. Alongside of her signature and in large type, some of which is underlined, appear the words “ Notice to Borrower. Do not sign this certificate until you are satisfied that the dealer has carried out his obligations to you and that the work or the materials have been satisfactorily completed or delivered.” The note upon which suit has been brought *446 herein is dated May 9, 1955, three days after the date of the completion certificate. The check issued by the plaintiff to Amalgamated, the dealer referred to in the completion certificate, is dated the same day. It appears without question that it was on the basis of the representation made by the female defendant herself to the effect that the work had been fully completed, that the plaintiff bank purchased the note and issued its check in payment therefor. ‘ ‘ In paying the proceeds of this note upon the written assurance of defendant that the work had been satisfactorily completed, and authorizing payment, plaintiff had no legal concern with the contract or with the subsequent leaks in the roof.” (Tarrytown Nat. Bank & Trust Co. v. Nerealty Co., 268 App. Div. 913; United States v. Hansett, 120 F. 2d 121.) Accordingly, any complaints which defendants may now make to the effect that the work is incomplete, is insufficient to charge the bank with responsibility therefor, in view of the contents of the completion certificate.
Defendants also contend that some of the terms of the note were filled in by the plaintiff bank, and that by reason thereof, the plaintiff bank may not consider itself a holder in due course since it had some connection with the original transaction. In support of their contention in this regard, defendants submit an affidavit from a well-known expert of questioned documents, one Ordway Hilton. He says he examined the note and has come to the conclusion that it was typewritten on the same typewriter on which a notice called “Advance Notice to Applicant for FHA Title I Loan ’ ’ was written by the bank. Accepting as a fact that the note was in fact typewritten on the typewriter of the plaintiff bank, there is still insufficient before the court to justify the conclusion that the plaintiff bank is not a holder in due course. It may very well be that the document was completed by the bank before it was presented to the defendants for signature, the purpose being to have defendants sign an instrument which would be acceptable to the bank to whom it was subsequently to be sold. In any event, if there were blanks in the instrument at the time of delivery to the payee dealer, that does not affect the validity of the note as the holder thereof “ had the implied authority to fill in the blank ” spaces. (Abbe Inst. v. Mackin, 106 N. Y. S. 2d 876; National Exch. Bank v. Lester, 194 N. Y. 461, 465; Rutherford Nat. Bank v. Nichols, 102 N. Y. S. 2d 658, 660.) Our courts have held that possession of this note, a negotiable instrument, had “ been parted with by the affirmative act of the maker in an incomplete state ’ ’. Consequently, a “ bona fide holder of an incomplete instrument * * * has an implied authority to supply the omission, and ■ *447 to hold the maker thereon * * * where the latter has by his own act, or in the act of another, authorized, confided in or invested with apparent authority by him, put the instrument in circulation as a negotiable paper. (Ledwich v. McKim, 53 N. Y. 307; Davis Sewing Machine Co. v. Best, 105 id. 59, 67.) ” (Linick v. Nutting & Co., 140 App. Div. 265, 267.)
Placing of the stamp dated “ May 9,1955 ” on the note by the bank prior to negotiation was an authorized act performed by the bank (Abbe Inst. v. Mackin, supra; Negotiable Instruments Law, § 33).
The filling in of the blanks with the name of the payee-dealer, the net and gross amounts of the loan, the number of payments, the amount of the monthly payments and the due date of the first payment, though it may have been done on a typewriter at the office of the plaintiff bank, does not alter the plaintiff’s position as a holder in due course. Such fact is not evidence that possession of the note had been transferred to the bank so as to constitute a delivery within the meaning of section 2 of the Negotiable Instruments Law, which requires a ‘ ‘ transfer of possession, actual or constructive, from one person to another. ’ ’ The blank portions were filled in strictly in accordance with the terms of the original contract, the loan application to the plaintiff bank, and the commitment which was made by the plaintiff to the defendants to finance the cost of the home improvement job by agreeing to discount the defendants ’ note in accordance with the terms specified on the credit application.
The facts clearly demonstrate that at the time the note was negotiated to the plaintiff on May 9, 1955, the date on which plaintiff bank issued its own check to the payee-dealer in payment therefor, the instrument was complete. There is no evidence that the blanks were filled in after negotiation to the plaintiff; ‘ ‘ rather it is a case where the note was completed before it was endorsed and delivered to the plaintiff for value and before maturity ” (Rutherford Nat. Bank v. Nichols, supra, pp. 660-661; United States v. Hansett, supra).
The case of Hunter v. Allen (127 App. Div. 572), cited and relied upon by the defendants, is not in point. In that case the maker sent to the bank signed notes blank as to date, time of payment and amount, and whenever the payee required funds the bank’s cashier would fill in the blanks in the amounts required by the payee and deposit them to the account of the payee. There the bank, having possession of the blank notes and filling in the missing elements according to the dictates of the payee’s various requirements from time to time, could not claim that it had a right to depend upon the payee’s possession of the *448 notes as apparent authority to fill in the notes. The following paragraph, at page 574, pointedly summarizes the distinction: “ The situation is not such as existed in Chemung Canal Bank v. Bradner (44 N. Y. 680). In that case a draft containing blanks was in the possession of the holder, and it was held that authority on his part to fill them in could be assumed from his possession. The decision was based on the doctrine that because apparent authority had been given it would be a fraud upon innocent parties to permit an assertion to the contrary. (Town of Solon v. Williamsburgh Savings Bank, 114 N. Y. 136.) In the present case as to the August fourth notes, the blank notes were sent to the bank and filled in by the bank officer. There was no reliance on possession as evidencing authority to complete the instrument ” (emphasis supplied).
In the Chemung case, (Chemung Canal Bank v. Bradner, 44 N. Y. 680, 687-688), the court went further and held that it made no difference ‘ ‘ if the blanks are filled up in the presence of the lender ”.
Considering then the claim of defendants that they never knew that they signed or were signing a note, the evidence before the court shows quite the opposite. In the first place, the letter written by the defendant-husband dated July 10,1955 addressed to the plaintiff, admits that said defendant knew that the contractor ‘‘ would have to take out a loan from a bank of his choice ” and that said loan would be repaid “ for three years at $57 per month ’ ’. In the second place, defendants received an “ Advance Notice ” previously referred to, dated April 22,1955, which is in a printed form showing the plaintiff bank’s name and advised defendants of the full amount of the loan, the amount of monthly payments, the name of the dealer and all other information which indicated clearly to the defendants that their application for a loan was approved. There can be no doubt that this letter was received by defendants, since it is this very letter which was used by the document expert to compare the typewriting found on the note itself. In addition, it appears that subsequent to the time the first payment was made, defendants certainly became aware of the fact that a note had been signed by them and at that time they claimed there was some difficulty with respect to the alteration contract. Nevertheless, they continued to make a total of 16 monthly payments on this note and it was not until November, 1956 that payments were discontinued. It is obvious that there could not have been any such failure of knowledge as defendants now contend.
The court does not intend by this decision to approve or condone the actions of the contractor who was the original payee on *449 the note; rather are such actions criticized and condemned. It is unfortunate that under situations such as exist here, defendants find themselves without a defense if the negotiable instrument which they signed is negotiated to a third party, a holder in due course. Whatever criticism may be made of this plaintiff in not first making a personal check with the defendants before purchasing the negotiable instrument, said plaintiff was within its rights in relying upon the certificate of completion which one of the defendants herself signed, and although it may be that the exercise of utmost care and discretion might have called upon the plaintiff personally to visit the premises to see whether the work was in fact completed, the law imposes no such obligation upon them. It may very well be that with the great incidence of happenings similar to this, where contractors are negotiating their paper with banks, and where home owners are thereafter complaining that the work is either not completed or improperly performed, those financial institutions which purchase such negotiable paper will set up more stringent rules and regulations so as to avoid the necessity of commencing actions such as this.
There is no defense as against this plaintiff and the motion for summary judgment is granted. Submit order.