Matthew M. Levy, J.
(I)
The plaintiff has instituted this action to require the payment of a promissory note made by Carlton Management Corporation (Carlton) and the defendants, Harvey J. Eisenstadt and Mrs. Judith Eisenstadt, payable to the order of Greater New York Burner and Boiler Service, Inc. (Greater New York) and indorsed without recourse by Greater New York, by Abe Samuels, and delivered to the plaintiff bank. Carlton was also a defendant herein but judgment was obtained by the plaintiff against it by default; the action was accordingly severed and subsequent proceedings were directed by the plaintiff against the Eisenstadts only. These individuals will, at times, be referred to hereinafter as the defendants.
There is no dispute as to the making and indorsement of the note, of the consideration therefor, and of default thereon, but the defenses are grounded on two claims: that the individual defendants are not personally liable on the note and that the plaintiff is not a holder in due course. (If the plaintiff is not a holder in due course, the additional defenses — fraud in the inducement of the signatures of the defendants on the note and breach of contract by the payee — would preclude enforcement of payment of the note.)
The controversy was submitted to me for trial and disposition on stipulated facts. The only issues to be resolved, therefore, are questions of law and their applicability to the conceded facts.
Prior to April 1, 1963, Greater New York (by Abe Samuels, an officer) applied for a loan for $13,450 from the plaintiff to cover the cost of a boiler and its installation, promising to give the plaintiff a note made by Carlton and cosigned by the defendants, Harvey J. Eisenstadt (the president of Carlton) and Judith Eisenstadt (the secretary of Carlton). The defendants were persuaded by Malcolm Lauer (a brother of Mrs. Eisenstadt and the sole stockholder and manager of Carlton) to act as officers of Carlton and to sign the note both in their *399 capacity as such officers and individually, with Lauer’s assurance that they would not be personally liable on the note. Each of the defendants signed the note twice on the bottom thereof. On the left hand side of the note, beneath the writing of the name of Carlton, they signed in their representative capacities as such officers• — the word “Pres” following the signature of Harvey J. Eisenstadt at that place, and the word “ Secty ” following the signature of Mrs. Judith Eisenstadt. On the right hand side of the note they signed individually.
On April 1, 1963, Samuels submitted to the plaintiff the proposal made by Greater New York and accepted by Carlton (signed Carlton, by the defendant Harvey J. Eisenstadt as President), as well as a completed credit application (also signed Carlton, by the defendant Harvey J. Eisenstadt as President). On June 5, 1963, the plaintiff mailed a notice addressed to Carlton, in care of Harvey J. Eisenstadt, indicating that the plaintiff had found Carlton’s credit to be satisfactory for a loan of $13,450. The notice said that the face amount of the note would be $17,292.24, payable in 84 monthly installments.[1] The notice further stated that receipt by the plaintiff of all necessary documents, including the completion certificate, was a prerequisite for the loan. An additional condition was expressed, on the back of the notice, requiring that the Eisenstadts sign the note personally. On June 10, 1963, Samuels delivered to the plaintiff the conditional sales contract, the completion certificate and the promissory note. The note was in printed form and was signed, as I have hereinbefore stated, but it was otherwise blank— i.e., as to the date, the amount, the name of the payee, the number of installments, the amount of each installment, and the dates of payment thereof. The plaintiff filled in the omitted particulars in accordance with the prior notice. The note was then indorsed by Greater New York (by Abe Samuels) and the plaintiff thereupon delivered to Greater New York its check for $13,450, the amount of the loan.
It appears that there was a conspiracy between Greater New York, Carlton, Samuels and Lauer to obtain a property improvement loan from the plaintiff, to be guaranteed by the Federal Housing Administration (FHA), without intending to make or ever making the proposed improvement (the installa *400 tion of the boiler in Carlton’s apartment building in Manhattan). In the United States District Court for the Southern District of New York, Samuels pleaded guilty to, and Lauer was convicted of, a charge of conspiracy, as well as of uttering false statements for property improvement loans, and of false completion certificates, submitted to the plaintiff and forwarded to FHA in connection with such loans, and of receiving proceeds thereof contrary to the terms of the completion certificates signed by them. At the time the defendants signed the note and at the time the plaintiff made the home improvement loan, neither plaintiff nor defendants knew of the conspiracy, and neither knew that the proceeds of the loan would not be used to finance the boiler installation, that the boiler and heating equipment would not be and were not installed, and that Lauer would and did receive part of the proceeds of the loan.
After 18 installment payments, Carlton defaulted, leaving a balance due on the note of $13,586.76 with interest. The note provides that, if the undersigned failed to pay any installments of the note when due, the holder at its option may declare the note immediately due and payable without notice or demand. The note also provides for late charges of 5% of arrears if any defaulted payment is more than 10 days in arrears, and for payment of attorneys’ fees of 15% of the principal and interest then due if an attorney is engaged to enforce or collect the note against the party. The amount that the plaintiff is entitled to recover — if judgment is to be rendered in favor of the plaintiff — is not contested.
(H)
The defendants deny, as I have said, that they are personally liable on the note. If their signatures on the left hand side of the note were their only signatures then their contention would be correct. It was made plain to the plaintiff that, as to the signatures on the left hand side of the note, the defendants were signing only as officers of Carlton, especially since their signatures and offices appeared immediately beneath that of Carlton. Where a person 1 ‘ signs for or on behalf of a principal, or in a representative capacity, he is not liable on the instrument if he was duly authorized”. (Negotiable Instruments Law, § 39.)[2]
Prior to the enactment of section 39 of the Negotiable Instruments Law, when an agent or representative signed an instru *401 ment allegedly on behalf of a corporation or other entity, “ all manner of subtle distinctions had to be drawn before one could say where liability would rest [citations omitted] ” (New Georgia Nat. Bank of Albany v. Lippmann, 249 N. Y. 307, 310 [1928]). The resulting holdings were to the effect that even “ a note bearing the name of a corporation in the margin, but signed by the president and treasurer in their own names [though] with the addition of their official titles, and thereafter discounted by a bank without notice dehors the instrument, was in law their individual promise ”. (New Georgia Nat. Bank of Albany v. Lippmann, supra, pp. 310-311, referring to Caseo Nat. Bank v. Clark, 139 N. Y. 307 [1893]; Merchants’ Nat. Bank v. Clark, 139 N. Y. 314 [1893]; First Nat. Bank v. Wallis, 150 N. Y. 455 [1896].)
The statutory standard, however, fixes the determination of liability of an individual signing on behalf of an entity on the fact as to whether he was given the authority to do so. “ Whenever the form of the paper is such as fairly to indicate to the eye of common sense that the maker signs as agent or in a representative capacity, he is relieved of personal liability if duly authorized ”. (New Georgia Nat. Bank of Albany v. Lippmann, supra, p. 311; citations omitted.)
The defendants in the case at bar were duly authorized to sign the note as officers of Carlton; and that they did so act as to the signatures on the left side of the note was obvious. On the other hand, as to the signatures on the right side of the note, the 11 eye of common sense ” could in no way conclude that the defendants had signed as such officers or in any other representative capacity (see Kraushaar v. Lloyd, 152 Misc. 269 [1934]; Manufacturers Hanover Trust Co. v. Jose Burgos Real Estate Corp., N. Y. L. J., April 9, 1969, p. 17, col. 1).
Moreover, the plaintiff had no notice of any kind that the defendants did not intend to be personally liable on the note. In fact, the defendants were notified. that one of the conditions under which the plaintiff would grant the loan was that the defendants sign the note personally. This was made evident to them in the “ Advance Notice to the Applicant for a Title I Home Improvement Loan ’ ’, dated June 5, 1963, sent to Carlton in care of the defendant Harvey J. Eisenstadt. That notice read: “ Subject to: Harvey J. & Judith Eisenstadt also to sign personally.”[3]
*402 Finally, the claim of the defendants that they signed twice under the mistaken impression, induced by Lauer, that they would not be personally liable, is meritless in this case. Even if they were under a misconception they would still remain liable on the note. ‘ ‘ A mistake of only one party that forms the basis on which he enters into a transaction does not of itself render the transaction voidable ”. (Restatement, Contracts, § 503 [1932]). In the case at bar, the defendants either were aware, or should have been aware, that they were required to sign personally. If the defendants were in error, their misapprehension was induced by Lauer, upon whom they chose to rely. “ When [one] signs an obligation without ascertaining its character and extent, which he has the means to do, upon the representations of another, he puts confidence in that person; and if injury ensues to an innocent third person by reason of that confidence, his act is the means of the injury, and he ought to answer to it.” (Chapman v. Rose, 56 N. Y. 137, 141-142 [1874]).
(Ill)
Of course, “ as between the original parties and those having notice of the facts relied upon as constituting a defense, the consideration and the conditions under which the note was delivered may be shown”. (Megowan v. Peterson, 173 N. Y. 1, 5-6 [1902].) That is to say, if the plaintiff is not a holder in due course, the fact that the defendants’ signatures were initially obtained by means of the fraudulent misrepresentations by even a third person (i.e., not the plaintiff) as to the nature of their obligation and of the agreement with Greater New York is a defense to the note. On the other hand, “ a holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon ”. (Negotiable Instruments Law, § 96.)
So, the fundamental question in the case at bar is whether the plaintiff is a holder in due course. In the circumstances of this case, the plaintiff is such a holder if (when the plaintiff received the instrument) it was “ complete and regular upon its face ” — since there can be no meritorious contention that, when the instrument was received by the plaintiff, it was not in good faith and for value and without notice that it has been dishonored, overdue, or subject to any defenses due to the infirmity of the instrument or of defect in the title of the person negotiating it (Negotiable Instruments Law, § 91) —unless, of course, bad *403 faith or notice of infirmity or of defect is to be inferred from the facts that there were blanks in the instrument when originally seen by the plaintiff and that it was the plaintiff who completed the instrument before it granted the loan. The decision must therefore turn upon the state of the law in respect of two subsidiary questions: First, when the plaintiff discounted the note was it ‘1 complete and regular upon its face ’ ’ ? Second, could the plaintiff truly become a holder in due course in the light of the facts that, when the promissory note was initially delivered to the plaintiff, it was blank in respect of the items hereinbefore mentioned and the blanks were filled in by the plaintiff itself?
(IV)
Under the doctrine of implied authority (National Eosch. Bank of Albany v. Lester, 194 N. Y. 461, 465 [1909]), the plaintiff was empowered to fill in the blanks of the note. ‘ ‘ Where a written contract, or a writing apparently intended to be a contract when completed, contains blank spaces, and words authorized by one party thereto are inserted by the other in the spaces, the writing as altered is operative ”; and, “ in the absence of circumstances showing a contrary intention, authority is implied to fill spaces with words that are apparently appropriate.” (2 Restatement, Contracts, § 442 [1932], on “Effect of Authorized Filling of Blanks; Implied Authorization ”; see Russell v. Marboro Books, 18 Misc 2d 166, 173-174 [1959].) Thus it is that when a note is delivered to a person with the intention, evidenced by clear circumstances or expression, that he fill in any blanks therein, he becomes an agent for that purpose and binds the principal accordingly. (Chemung Canal Bank v. Bradner, 44 N. Y. 680, 688 [1871].) The plaintiff here was such an ad hoc agent, since it was the clear intention of all of the participants, including Carlton and the defendants, that the plaintiff fill in the blanks with the terms agreed upon by them; and the plaintiff completed the note accordingly.
In effect, section 33 of the Negotiable Instruments Law codified the doctrine of implied authority, affording the plaintiff here statutory authorization to fill in the blanks on the note in the following all-inclusive language: “ Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill it up as such for any amount. In order, *404 however, that any such instrument, when completed, may he enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up. strictly in accordance with the authority given and within a reasonable time.”
In the instant case, I also hold that the plaintiff had express documentary authority to complete the terms of the instrument. (See First Nat. City Bank of N. Y. v. Folsom, 26 Misc 2d 984, 984-985 [1960].) The note in the case at bar provides: “ The holder is hereby authorized to fill in any blank spaces in this note and to date this note as of the date when the loan is made and to correct the patent errors herein.” What the plaintiff did was in strict accordance with the authority given it.
I recognize that, at the precise moment when the plaintiff filled in the promissory note, it was not then a “ holder ” of the instrument in the technical statutory sense in which that term is defined. For, there, a ‘1 holder ” is “ the payee or indorsee of a bill or note, who is in possession of it, or the bearer thereof.” (Negotiable Instruments Law, § 2.) At that time, the plaintiff was neither the payee nor indorsee nor the bearer. Greater New York was the payee of the note, and the note as yet had not been indorsed. After the note had been fully completed by the plaintiff, it wasi then redelivered by the plaintiff to, and indorsed by, the payee, “ Greater New York Burner & Boiler Service Inc. by Abe Samuels ”. Then it was that negotiation to the plaintiff was complete. ‘ ‘ An instrument is negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof. * * *
If payable to order it is negotiated by the indorsement of the holder completed by delivery.” (Negotiable Instruments Law, § 60.)
The plaintiff now held an instrument which was complete and regular on its face. The note had been completed prior to negotiation ; the plaintiff had become a ‘ ‘ holder ’ ’ thereof and adopted its prior insertions in the blanks.
(V)
The remaining question is whether the fact that plaintiff (as the party claiming the status of a holder in due course) was also the party which filled in the blank instrument prior to negotia *405 tion deprives it of the right to assert such status — i.e., that, thereby, the plaintiff ipso facto was to be charged with notice of infirmity.
Hunter v. Allen (127 App. Div. 572 [1908]), cited by the defendants, is not apposite. In that case, the maker sent to a bank signed notes, blank as to date, time of payment and amount, and whenever the payee requested funds the bank’s cashier would fill in the blanks “ as the occasion required,” and would credit the account of the payee accordingly. The notes were not paid when due. They were transferred to plaintiff after maturity. The court, of course, denied holder-in-due-course status to plaintiff in the light of his having received the notes subsequent to their due date. The court also held — the point of moment in this case- — -that the bank was not a holder in due course because it had no authority to complete the instruments and therefore took them when they were not “complete and regular upon [their] face.” (Negotiable Instruments Law, § 91.) The bank, there, had neither implied, statutory nor express authority to fill in the blanks in the notes since the maker gave it no instructions as to insertions. The payee, if it did give such instructions to the bank, did so without authority from the maker. The payee was not a general agent of the maker and, since the notes were never delivered to the payee, it was not a specific agent of the maker for the purpose of completing the notes to be delivered to the bank.
The purpose of the rule that an instrument be complete and perfect on its face in order to confer the status of a holder in due course is to assure that the instrument was not “ prematurely put in circulation contrary to the will and intention of its maker ’ ’ (Davis Sewing Mach. Co. v. Best, 105 N. Y. 59, 67 [1887]), where the court denied the status of a holder in due course when the incomplete element filled in by a third party was the maker’s signature). The protection exists, in my view, even though the due completion of the instrument is by the party claiming to be a holder in due course. In the case at bar, the instrument was completed in accordance with the authority given by the makers (Carlton and the Eisenstadts) to the payee (Greater New York) and the latter’s indorsee (who turned out to be the plaintiff), and subsequently the note was returned to the payee for indorsement before negotiation. Its terms were thus adopted in advance of completion by the defendants, and after completion by the payee. The intentions of these parties- — in the light of the circumstances herein — were thereby adequately safeguarded.
*406 I therefore determine that the plaintiff is a holder in dne course of the note, although it was the plaintiff itself which filled in the blanks (cf. Prudential Sav. Bank v. Tomassone, 7 Misc 2d 444 [1957], where the defendants’ signatures were not fraudulently procured).
(VI)
It is axiomatic that a holder in due course takes free of any defenses available to prior parties among themselves (Negotiable Instruments Law, § 96) and it does not matter that there was “breach of a contract out of which the note evolved” (American Trust Co. v. Glassman, 24 Misc 2d 1045, 1047 [1960]) or that the payee may have acted in bad faith toward the makers (Ram Ind. v. Van De Maele, 20 A D 2d 783 [1964], app. dsmd. 14 N Y 2d 968 [1964]). Nor does the holder “ owe to the party who puts negotiable paper afloat the duty of active inquiry, to avert the imputation of bad faith.” (Hall v. Bank of Blasdell, 306 N. Y. 336, 341 [1954].)
Neither can the defendants avail themselves of the defense that their signatures were fraudulently procured by Lauer, a third party. The principle to be applied is that “ as between two innocent victims of the fraud, the one who made possible the fraud on the other should suffer.” (Island Trading Co. v. Berg Bros., 239 N. Y. 229, 233 [1924]; Zendman v. Harry Winston, Inc., 305 N. Y. 180, 186 [1953]).
The holder-in-due-course doctrine ‘ ‘ is based on a policy of freedom of negotiability ”. (First Nat. Bank of Odessa v. Fazzari, 10 N Y 2d 394, 400 [1961].) In Commercial Credit Corp. v. Smith (143 Misc. 478, 479 [1932]) the court said: “ It is better that the defendants and others who so carelessly affix their names to papers, the contents of which are unknown to them, should suffer from the fraud their recklessness invites, than that the character of commercial paper should be impaired and the business of the country thus interfered with and unsettled. ’ ’
The defendants here signed the note without inquiry. The defendant Harvey Eisenstadt signed the completion certificate, thereby contributing to the perpetration of the fraud. In Island Trading Co. v. Berg Bros. (239 N. Y. 229, 233 [1924], supra), followed in County Trust Co. v. Berish (4 A D 2d 777, 778 [1957]), the court held that “ both parties having been victimized by the acts of the contractor, the loss must fall upon defendants who permitted its occurrence by the signing and delivery of the completion certificate.”
The defendants cannot validly defend upon the ground that the proceeds of the loan were obtained and used unlawfully. *407 In Ferkin v. Board of Educ. (278 N. Y. 263, 268 [1938]), citing Messersmith v. American Fid. Co. (187 App. Div. 35, 37 [4th Dept., 1919], affd. 232 N. Y. 161 [1921]), the court stated: “ An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case.”
As comakers of the note and as officers of Carlton, the defendants had the responsibility and the ability of seeing to it that the proceeds of the loan were properly applied.
(VH)
I hold that the plaintiff is entitled to the relief it seeks, that is, the amount due on the note, $13,586.76, plus late charges of $10 and attorneys’ fees in the sum of $1,757.55, less rebate of discount of $1,946.40, plus interest on $11,640.36 from the 13th day of May, 1965.
This opinion constitutes the decision of the court (CPLB 4213). The Clerk is directed to enter judgment accordingly.

. No point is made or explanation given by any of the parties as to the difference in the dollar amount specified in the notice and in the note on the one hand and the amount of the loan on the other. As I hereinafter state, if the decision on the law is for the plaintiff there is no dispute between the parties as to the amount of recovery.

. All references herein are to the Negotiable Instruments Law, since the Uniform Commercial Code became effective after the relevant dates of the instant transactions.

. On the basis of the stipulated facts, and since no issue is made by the defendants as to any difference in status in this regard as between them, I infer that Mrs. Eisenstadt was cognizant (as was her husband) of this requirement (cf. Matter of Allstate Ins. Co. v. Flaumenbaum, 62 Misc 2d 32, 48-50 [1970]).