DANIEL GREENVAULT *v.* THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS AND MECHANICS' BANK OF MICHIGAN, AND GARRETT BREESE.

Under the Revised Statutes of 1838, the clerks of the circuit courts had *no power* to administer oaths in vacation.

An affidavit sworn to before a person not authorized to administer oaths, is a *nullity*.

The making and filing with the clerk, of the affidavit required by R. S. 1838, p. 506, ch. 1, § I, is essential to confer jurisdiction upon the circuit court, over a proceeding by attachment under that statute.

If a court act without authority, its judgments will be regarded as nullities; and the jurisdiction of a court exercising authority over a subject matter, may be inquired into, in every court where the proceedings of the former are relied upon by a party claiming the benefit of such proceedings.

Accordingly, where it appeared from the record of a judgment in attachment under ch. 1 of R. S. 1838, p. 506, that the preliminary affidavit required by § 1 of that chapter was sworn to before a person not authorized to administer oaths, *it was held*, that the proceedings were void for want of jurisdiction; and that a person claiming under and who was a party to them, could not maintain ejectment against a mortgagee of the defendant in attachment, in possession under a mortgage executed while they were pending.

An act of April 20, 1839, (S. L. 1839, p. 228, § 36,) amendatory of R. S. 1838, p. 506, ch. 1, declares, that "no writ" of attachment "shall be quashed on account of any defect in the affidavit on which the same issued, provided, the plaintiff, his agent or attorney shall, whenever objection may be made, file such affidavit as may be required by law." *Held,*

1. That this act did not authorize the filing of a new affidavit, after judgment and sale of the attached premises, where the original affidavit, filed before the act took effect, was a nullity, in consequence of having been sworn to before an officer not authorized to administer oaths: and,

2. That if it did, such amendment would not render the title acquired under the proceedings in attachment valid, as against the claim under a mortgage executed by the defendant in attachment, while they were pending.

THIS was an action of ejectment, tried in the Lenawee Circuit Court, at the October Term, 1845, before the Hon. A. FELCH, Presiding Judge.

Both parties derived title through one Edward Bissell.

Greenvault, the plaintiff, claimed through certain proceedings in attachment, in said Lenawee circuit court, instituted against Bissell, as an absent debtor, by one Caleb N. Ormsby. These proceedings were had under Ch. I, of R. S. 1838, p. 506, the two first sections of which were as follows:

"Sec. 1. Any creditor shall be entitled to proceed by attachment against the property of his debtor, *upon the conditions, and in the cases* following, to wit: The creditor, or some person in his behalf, shall make and file with the clerk of the circuit court of any county, an affidavit, stating that the defendant against whom the attachment is requested, is justly indebted to such creditor, in a certain sum therein mentioned, according to the belief of the deponent, and being more than one hundred dollars, and that the same is due upon a contract," &c.; and further, "that according to the belief of the deponent, either, *First*, The defendant has absconded to the injury of his creditors; or, *Second*, That the defendant does not reside in this state, and has not resided therein for three months immediately preceding the time of making the application for such attachment."

"Sec. 2. Upon the filing of such affidavit with him, the said clerk shall issue a writ of attachment," &c. "If any such writ shall issue before such affidavit filed as aforesaid, *such writ shall be quashed.*"

The attachment against Bissell was sued out September 28, 1838, and was founded upon an affidavit of indebtment, &c. which was sworn to before the clerk of the circuit court, on the 24th of the same month, and during vacation of that court.

The Revised Statutes of 1838, contained no provision, in express terms, empowering the clerks of the several circuit courts to administer oaths or take affidavits.

On the 9th of October following, the sheriff seized the premises in controversy by virtue of this attachment; caused the same to be appraised; filed a certified copy of the writ, and a description of the premises, and statement of the time when they were attached, with the register of deeds, pursuant to R. S. 1838, p. 507, § 5; and made return of the writ to the circuit court.

Greenvault, being a creditor of Bissell, filed his declaration under the attachment, as did also, sundry other creditors.

In October, 1839, Ormsby, the original plaintiff in the attachment, and the other creditors who had filed their declarations, obtained judgments against Bissell. An order for the sale of the attached premises to satisfy these judgments was thereupon granted by the court, by virtue of which the sheriff sold the premises in controversy to Greenvault, May 2, 1840. On the expiration of the equity of redemption, a deed of the premises was executed by the sheriff to Greenvault.

By an act of April 20, 1839, the first section of the chapter above referred to relative to proceedings by attachment, was amended by adding thereto the following:

" But no writ shall be quashed on account of any defect in the affidavit on which the same issued : *Provided*, That the plaintiff, his agent or attorney, shall, whenever objection may be made, file such affidavit as is required by law." S. L. 1839, p. 228, § 36.

At the April Term, 1842, Bissell moved the circuit court to set aside the attachment and subsequent proceedings, on the ground, among others, that the affidavit of indebtment, &c. upon which the attachment was founded, was a nullity. The court refused the motion, and granted leave to the plaintiff in attachment to file a new affidavit; and the same was filed accordingly.

The President, &c. of the Farmers and Mechanics'

Bank of Michigan, claimed title to the premises through a mortgage executed by Bissell on the 23d December, 1838. When this suit was commenced, they were in possession under this mortgage, by Breese, who was their tenant.

It did not appear that, at the time of the execution of the mortgage, the bank had notice of the proceedings in attachment against Bissell.

On the trial of the cause, the jury rendered a special verdict, finding the above facts. The plaintiff having moved for judgment thereon, the Presiding Judge reserved the questions arising upon this motion for the opinion of this court.

*Baker & Millerd* and *E. Lawrence*, for the plaintiff, contended :—1. That the clerk had authority to take the affidavit on which the attachment was founded, not only from the common law, which conferred upon clerks and prothonotaries the power of administering oaths; but from R. L. 1833, p. 573, § 3, which was not repealed by R. S. 1838, p. 689, § 3, and p. 697, § 2, not being repugnant to any provision of the latter statutes, and not having been revised or re-enacted by them.—2. That if the clerk had no such authority, the defect was amendable under S. L. 1839, p. 328, § 36, and had been amended; that the defect did not render the affidavit a *nullity,* and was no more fatal than a neglect to state what the statute requires should be stated, would have been.—3. That the defect in the affidavit did not go to the jurisdiction, but was mere irregularity; that such was the legislative construction given by the amendatory act of 1839; and that the judgment was valid until reversed, and could not be impeached collaterally. *Voorhees* v. *Bank of United States,* 10 Peters, 449; *Grignon's Lessees* v. *Astor,* 2 Howard, 319;

*Thompson* v. *Tolmie,* 2 Id. 157 ; *Bank of United States* v. *Bank of Washington,* 6 Id. 8 ; 6 Wheat. 109.

*T. Romeyn,* for the defendants.

The proceeding by attachment against the property of a non-resident, and without the service of personal process or outlawry, was unknown to the common law.    The *custom of London* is most analogous to it ; but that is a special custom, of which the courts will not take judicial notice.    It must be pleaded specially.    1 Chitt. Pl. 216, 217 ; 10 Wentworth, 462.—Actions by attachment under our statute are special and extraordinary, and in the nature of summary proceedings.    The cases hereafter cited as to the rules applicable to summary proceedings show their character.

It is not material to inquire whether the circuit courts of this state are inferior or otherwise.    The difference between inferior and superior courts, (in regard to the questions involved in this suit,) is, that in the former there is no presumption of jurisdiction ; in the latter, there is. Where a court of general jurisdiction exercises an extraordinary power, by special proceedings, it is, *quod hoc,* an inferior court.    4 Ph. Ev. by C. & H. 945, '6, 825, '6 ; 6 Peters, 119 ; 5 Pet. Cond. R. 32.

The general doctrine of the law is, that in summary or special proceedings, where a court exercises an extraordinary jurisdiction, under a special statute, which prescribes its course, that course ought to be *strictly pursued ;* otherwise the proceedings are not merely *voidable,* but absolutely *void.*    They do not derive their efficacy from the general authority of the court.    The court can act only under the special limited powers granted by the statute, and according to its forms of procedure.    See as to the doctrine in England *Rex* v. *All Saints,* 1 Man. & Ryl. 668 ; 1 Cowp. 26, '8, '9 ; 3 Wils. 297 ; 1 Com. Dig. 720,

'1; in Ohio, 1 Ohio Cond. R. 272, 377; 3 Id. 133, 155; Wright's R. 567; 12 Ohio R. 272, 385, 667; in Indiana, 1 Blackf. 35, 215, 291; 3 Id. 230; 5 Id. 275; in Connecticut, 1 Conn. R. 46, 249; 6 Id. 528; 3 Day's R. 168; 5 Id. 527; in Virginia, 2 H. & M. 308; in Massachusetts, *Smith* v. *Rice*, 11 Mass. R. 510; *Heath* v. *Wells*, 5 Pick. 140; *Whitman* v. *Tyler*, 8 Mass. R. 284; *Bissell* v. *Briggs*, 9 Id. 462; in Vermont, 2 Vt. R. 269; 3 Id. 120; in New York, *Borden* v. *Fitch*, 15 John. R. 141; *Mills* v. *Martin*, 19 Id. 33, 40; 8 Cow. 370; *Latham* v. *Edgerton*, 9 Id. 229; 11 Wend. 647; 15 Id. 369; *Bloom* v. *Burdick*, 1 Hill's R. 141; in Tennessee, 2 Yerg. 484; in Louisiana, *Collins* v. *Batterson*, 3 Mill. Lou. R. 242, '5, and in United States Courts, *Wise* v. *Withers*, 1 Pet. Cond. R. 552; *Griffith* v. *Fraser*, 8 Id. 7, 8, 9; *The Mary*, Ibid. 312; *Parker* v. *Rule's Lessee*, Ibid. 273; *Stead's Ex'rs* v. *Course*, 2 Id. 154; *Williams* v. *Peyton*, 4 Wheat. 77; *McClung* v. *Ross*, 5 Id. 116; *Thatcher* v. *Powell*, 6 Id. 119; *Rockendorf* v. *Taylor*, 4 Peters, 359; *Ex parte Wood*, 5 Pet. Cond. R. 603; *Elliott* v. *Piersol*, 1 Peters, 340; *Bank of Hamilton* v. *Dudley's Lessee*, 2 Id. 498, 523; *Walker* v. *Turner*, 5 Pet. Cond. R. 672; *Shriver's Lessee* v. *Lynn*, 2 Howard, 59, 60.

Were the proceedings in this case such as to give the court jurisdiction? To constitute jurisdiction, not only the subject matter must be within the general powers of the court, but the person or property to be affected, must be brought within the powers of the court, by the service of legal process, *lawfully issued* and properly served. In this case, no affidavit of indebtment, &c. was filed previous to the issuing of the attachment. The jurat of the county clerk was a *nullity*. He had no power to administer oaths. Such has been the construction given to the matter by all of the judges of this court. Such was the legislative construction given by the act of 1839, which

empowered the clerk to administer an oath. The filing of the affidavit is, by the statute, a *condition* of the *allowance* of the writ. The authorities are abundant and luminous to show that "where the right of issuing process depends upon certain proof being given, in order to lay the foundation of it, or certain other preliminaries and indispensable requisites being complied with, the want of such renders the whole void." 4 Ph. Ev. by C. & H. 1000, '1, '2; 1 Blackf. Ind. R. 35; 3 Id. 230, and other cases supra. The court had, then, no jurisdiction in regard to the *process*.

But it is said that the proceedings have been *amended*, by filing a new affidavit under S. L. 1839, p. 228, § 36. Without the statute, it is clear that the court would have had no power to direct such an amendment. 4 Cowen, 80, 82. The statute declares that the attachment "shall not be quashed on account of *any defect* in the affidavit on which the same issued." It allows a *defective affidavit* to be amended; but does not save the writ where there has been *no affidavit*. The paper filed in this case was *no affidavit;* therefore, not amendable. Grah. Pr. 121, 122; 18 John. R. 213. But if the statute was intended to allow an affidavit to be filed where none had been filed before, we deny the right of the legislature to pass it. Before the affidavit the court had no jurisdiction. The proceedings up to this point were invalid. Legislation could not, by retrospective enactments, give them validity even as between the original parties.

But if the amendment was rightly allowed as between the parties to the suit in the attachment, (and it will be remembered that the plaintiff here was a party to that suit, and cannot therefore claim as a *bona fide* purchaser,) it cannot affect the present defendants who acquired their interest in the property before the amendment was allowed. *Putnam* v. *Hall,* 3 Pick. 445; *Williams* v. *Brackett,*

8 Mass. R. 240 ; *Freeman* v. *Paul*, 3 Greenl. R. 260 ; 6
N. Hamp. R. 749 ; 5 Vt. R. 97 ; 8 T. R. 153 ; 4 Maule
& S. 329 ; *Emerson* v. *Upton*, 9 Pick. 167 ; 15 Conn. R.
34 ; 4 Ph. Ev. by C. & H. 1096.

The proceedings in attachment, then, were defective in
a matter essential to the jurisdiction of the court ; this
defect appears on their face ; and being so defective, they
are void, and no title can be asserted under them.   4 Ph.
Ev. by C. & H. 801, '26, 903 ; 13 Peters, 511 ; 3 How-
ard, 762 ; 4 Cow. 457 ; 8 Id. 370 ; 4 Ph. Ev. by C. & H.
637, 904—6, 913, 1006—12.

2. There is another principle which allows us even to
contradict the record, in this case, and show, as against
the plaintiff in this suit, error in the judgment in attach-
ment, (though not apparent on the record,) which would
defeat the proceedings on appeal or writ of error, even if
it does not go to the jurisdiction of the court ; and this
whether they be viewed as ordinary common law pro-
ceedings or not.   The plaintiff in this suit was a party to
the proceedings in attachment, and is not entitled to the
protection of a *bona fide* purchaser.   4 Ph. Ev. by C. &
H. 990, '2, '3, 1006—'10, '12 ; 1 Ves. 195 ; 5 Peters,
370 ; 8 Id. 128, 146 ; 2 Hill's R. 566, 633, '4 ; 1 Cowen,
641, '5, 735.   The defendants in this suit were not par-
ties, nor privies to the record in attachment, and could
not have brought error.   Bac. Abr. Error B.; 6 Com.
Dig. 445—7, Tit. Pl. 3, B. 9 ; Grah. Pr. 936 ; 8 Cow.
333, '8.   The land in controversy having been aliened
before verdict or judgment, the estoppel of the judgment
does not run with the land.   There is nothing in our stat-
utes modifying these common law rules.   The rule that
one cannot contradict a record, applies only to such as
are parties or privies to the record, and may bring error.
This is implied in the above cases.   See also 4 Cowen,
457 ; Cro. Eliz. 199 ; 1 Ld. Raym. 669 ; 2 Salk. 600 ; 2

Mod. R. 308. In these cases the party was allowed to contradict the record by plea and proof *aliunde.* Much more shall he be allowed to take advantage of error apparent.

WHIPPLE, J. delived the opinion of the Court.

The paper purporting to be an affidavit, filed with the clerk as the foundotion of the attachment against Bissell under which the plaintiff claims, was sworn to before the clerk of the circuit court of Lenawee county, in vacation. The first question that arises in the case, is, whether the clerk was authorized to administer the oath, or take the affidavit. Whatever may have been the powers, in this respect, of the clerk, at common law, during the term, and while the court was in actual session, it is clear that the authority to administer oaths or take affidavits in *vacation,* must result from some positive provision of the statute *in force.* No provision conferring such authority is to be found in the Revised Statutes of 1838; and it follows, as a necessary consequence, that the act of the clerk in administering the oath, was extra judicial and void.

The act of the clerk, then, being void, no affidavit was, in fact, filed previous to the issuing of the writ of attachment.

The next question to be determined, is, whether the issuing of the writ, without an affidavit, was also void; or, in other words, did the authority to issue the process, depend upon the making and filing of the affidavit with the clerk? This question must be answered in the affirmative. The statute, (see ante, p. 499, § 1,) declares, in express terms, that the creditor shall be entitled to proceed by attachment, against his debtor, upon the *condition,* that an affidavit, such as is required, be fiiled with the clerk; and the second section, in terms equally clear, authorizes the clerk to issue the writ, upon the filing of the affidavit.

The intention of the legislature is manifest from the language of the act itself, and that intention we are bound to carry into effect.

The next inquiry is, what was the legal effect of issuing the writ without making and filing the affidavit required by law, upon the judgment and subsequent proceedings of the circuit court.   This inquiry is answered by the opinion of this court in the cases of *Palmer* v. *Oakley*, (ante, p. 433,) *Wight* v. *Warner*, 1 Dougl. Mich. R. 384, and *Clark* v. *Holmes*, Ibid. 390.   In the case first named, we recognized the rule as laid down in the case of *Elliott* v. *Piersol*, 1 Peters, 340, that the decision of a court which has acquired jurisdiction of a cause, will be held binding until reversed; but that if a court act without authority, its judgments will be regarded as nullities; and that the jurisdiction of a court exercising authority over a subject matter, may be inquired into in every court where the proceedings of the former are relied on, by a party claiming the benefit of such proceedings.   The rule thus laid down, is firmly established by the numerous decisions referred to in that case, and is recognized in all courts, where the common law prevails, as too firmly settled to be shaken.   Another rule, sustained by an unbroken current of decisions in this country and England is, that where a court is vested with extraordinary powers, under a special statute prescribing its course, that course ought to be exactly observed; and the facts which give jurisdiction, ought to appear, in order to show that its proceedings are *coram judice*.   These principles are applicable to all courts, whether of inferior or superior jurisdiction; the only difference being, that in respect to inferior courts, jurisdiction must appear on the face of the proceedings; while, in regard to superior courts, jurisdiction will be presumed, until the contrary is shown.   It will be unnecessary, at this time, to recur to the reason-

ing or authorities by which these propositions are sustained, as the cases to which I have referred, contain not only a full exposition of our views upon those propositions, but a full citation of many of the leading authorities by which they are established.

Nothing remains for us but to apply the principles laid down by us in those cases, to the questions now before us. What, then, was the character of the court, and the nature of the jurisdiction it exercised in suits in attachment? The circuit court was a court of general common law jurisdiction, in both civil and criminal cases. Its *general* powers are clearly defined by statute. It was, in other words, a court of superior jurisdiction. Do proceedings in attachment, fall within the circle of the general powers conferred upon the circuit court by statute? They clearly do not. The jurisdiction in this respect is special and extraordinary. The mode of proceeding is peculiar, and in derogation of the common law. It is special, because limited to cases either of absconding or non-resident debtors. It is extraordinary, because the process, contrary to the general rule recognized in our statutes, acts upon the property and not the person of the debtor. It is, in its nature, a proceeding *in rem*, to collect a debt due from a debtor to his creditor. It is in derogation of the common law, because it is a direct proceeding to subject the real estate, by actual sale, to the payment of debts.

I have already said that there was no preliminary proof whatever to authorize the issuing of the attachment. The *facts* which give jurisdiction, do not appear in the proceedings. In the absence of such proof, what, it may be asked, is the judgment which the law pronounces upon such proceedings? There being no authority to issue the process, it is of course void. Being void, the *service* was void; the property attached never was brought with-

in the jurisdiction of the court, and the court had no authority to order its sale. In short, the circuit court never had jurisdiction of the subject matter, because the facts necessary to call that jurisdiction into exercise never existed. Can a party, then, to such proceedings—one who stood in the character of a plaintiff, so far as the prosecution of his own claim was concerned—protect himself, under a sale made by virtue of an order entered in the records of a court which never acquired jurisdiction of the subject matter—a court within whose jurisdiction the property never was brought? As well might it be contended that a judgment, where the proceedings are *in personam*, could be sustained, when it affirmatively appears in the record, that the person to be affected by the judgment never was brought within the jurisdiction of the court by whom it was rendered. The distinction is well defined between cases where jurisdiction is acquired, and is improvidently exercised, and cases where jurisdiction never was acquired. In the first class of cases the judgment will bind until reversed. In the other, the judgment is a mere nullity; it is as though it had never been entered. In the first class, the record cannot, in general, be impeached; in the last, it may be impeached, especially, if it shows on its face that jurisdiction was usurped. Acts done by a court, without authority, are equally as void, and for the same reason, as acts done without authority by either the executive or legislative departments of the government. If either of these departments usurp an authority not conferred by the constitution or laws of the state, and a party seeks to shelter himself under such usurped authority, in a judicial proceeding, the court before whom such a proceeding is pending, would not hesitate to declare all acts done under such authority void. If not, then we should have to submit quietly to the well merited rebuke, that rights the most sacred are no

longer guarded and protected by just laws enacted by our consent ; but are left to the tender mercies of a man or set of men, who, although acting under color of authority, are mere usurpers.   Apply this reasoning to the case before us.   The powers possessed over the person and property of the citizen, by the judicial tribunals, are as accurately defined as are the powers conferred upon the other departments of the government.   In the particular case before us, the circuit court of Lenawee county was authorized, by a judicial proceeding, to divest one person of his property and transfer it to another, under a certain state of facts.   The facts, however, which authorized the act to be done, did not exist ; nevertheless, the court proceed to do the act, by which, under color of legal proceedings, one man is divested of his estate, and it is transferred to another.   What difference it may be asked, is there between such an act, and an act of the legislature which should declare that the property of A. should become the property of B.   No difference in principle exists between the two cases.   In the one case, it would be regarded as a bold and palpable usurpation ; in the other, the usurpation would appear less bold, although more dangerous, because partially concealed beneath the solemn drapery with which judicial proceedings are invested. The theory of our government contemplates that its powers should be distributed, and administered by three departments ; neither of which should exercise powers conferred upon another.   This principle, so necessary to the existence of free government, should be carefully observed ; yet, it is to be regretted, that, to suit the emergencies of particular cases, courts of justice have sometimes assumed legislative powers.   Not contented with expounding the law, they have resolved themselves into legislative bodies, and made laws adapted to the supposed equities of particular cases.   The opinions of men are thus

substituted for the will of the community expressed through the legislature. In the case before us, the legislature have thought proper to give to the circuit court jurisdiction in certain cases, and upon certain conditions. To call this jurisdiction into exercise, it must be shown that the conditions upon which it depended have been fulfilled; and where this jurisdiction is special and extraordinary, not falling within the line which circumscribes the general powers of the court, it would seem that the record itself should show affirmatively the existence of all the facts necessary to call into action the special powers thus granted. 3 Blackf. R. 230.

Much reliance was placed upon the case of *Voorhees* v. *Bank United States*, 10 Peters, 473. But the distinction between that case and the one before us is so obvious as to render it impossible to use it as an authority. 1. In that case, Voorhees was the alienee of Cutter, who was the defendant in the attachment, by a conveyance executed *long after* the judgment in attachment. Cutter, then, stood in no better plight than Voorhees would have done, had he brought suit against the bank. 2. It was competent for Voorhees to have brought error upon the judgment, which he failed to do. In the case before us, the defendants could not have availed themselves of this remedy to reverse the proceedings below. 3. Stanley, under whom the Bank of the United States purchased, was regarded in the light of an *innocent* purchaser; whereas, in the case before us, the plaintiff was a party to the proceedings in attachment, and was bound to see that the court had jurisdiction. The Supreme Court of the United States decided in that case, that from what appeared on the face of the proceedings, it might be fairly presumed that all the facts necessary to give jurisdiction to the court of common pleas of Ohio, were shown to that court before the rendition of the judgment confirming the acts of the

auditors. In the case before us, nothing is left to implication. The verdict sets out all the proceedings, from which it manifestly appears that there was no affidavit proving the facts necessary to confer authority upon the circuit court to issue the process. Whether the presumptions made in support of the judgment in the case of *Voorhees* v. *Bank of United States,* were, or were not justified by the facts of that case, it is quite unnecessary to determine. The fact that the report of the auditors making the sale was confirmed by the court of common pleas of Ohio, was, in the opinion of the Supreme Court of the United States, sufficient to authorize the presumption, that all the jurisdictional facts were shown; especially, as reference was had, in some part of the proceedings, to an affidavit, which, in the absence of all other proof, the court would intend was regular, and in accordance with law. It is to be remembered, however, that the controversy was between the alienee of the defendant in attachment, who purchased *subsequent* to judgment, and innocent third persons, who claimed through the purchaser at the sale, by virtue of the judgment in attachment, and whose purchase was afterwards confirmed by the court.

It is not to be denied, that some of the views expressed by Mr. Justice *Baldwin,* touching the *conclusiveness* of judgments rendered in attachment causes, differ essentially from those expressed by other judges and courts of great respectability. But upon this point, much of what is said by Judge *Baldwin,* was not called for by the facts in the case before the court. While, therefore, I am unable to perceive, *if the premises assumed by the Supreme Court were correct,* why the judgment of that court may not be sustained, I desire it to be understood, that we express no opinion upon questions which did not necessarily call for the opinion of the court.

The last question to be considered, is, as to the legal

Greenvault *v.* Farmers and Mechanics' Bank.

effect of the filing a new affidavit, by the plaintiff, by vir-
tue of the order made at the April Term, 1842, of the
circuit court.

First : Was it competent to grant the order ? The act
of 1839 provides, that "no suit shall be quashed on ac-
count of any defect in the affidavit on which the same
issued : *Provided,* That the plaintiff, his agent or attorney
shall, whenever objection may be made, file such affida-
vit as is required by law." S. L. 1839, p. 228, § 36.
This law, it is to be observed, was not in force at the time
the paper purporting to be an affidavit, and upon which
the attachment was issued, was filed.   Do the words of
the act authorize a new affidavit to be filed, where the ori-
ginal affidavit was void ; or, in other words, where no af-
fidavit was made or filed, as contemplated by the statute ?
The amendatory act speaks of *defects* in the *affidavit* upon
which the writ issued ; from which it results, by necessa-
ry implication, that *defects* could not be supplied, in cases
where no affidavit whatever was filed.   It evidently con-
templated cases where affidavits were filed, but which,
through ignorance, inadvertence, or mistake, did not em-
body all the facts necessary to authorize the issuing of the
writ ; but it could not have been the intention of the le-
gislature to authorize an affidavit to be filed after judg-
ment was rendered and the property attached sold, and
thus legalize acts which were absolutely void.   The lan-
guage, in the latter part of the act, is conclusive upon
this point.   It authorizes a party to "file such affidavit as
is required by law ;" implying that the original *affidavit*
was *not* such as was required by law.   In the case before
us, if the construction contended for by the plaintiff, be
correct, an affidavit filed three years after the rendition of
the judgment, would have the effect of rendering a pro-
ceeding legal, which was before that time a mere nullity ;
—of giving jurisdiction to a court, which, at the time the

writ issued and the judgment was rendered, had no juris-diction. Such a power the legislature would hardly ex-ercise; and there is nothing in the amendatory act, from which it can, with any show of reason, be contended that such was the intention of the legislature.

But, supposing for a moment, that the legislature might, in the plenitude of its authority, exercise such a power, and that the act of 1839 warrants the construction con-tended for by the plaintiff, how could it affect the rights of the present defendants? The filing, with the register, of the writ of attachment, did not operate as constructive notice to the defendants, who purchased soon after the date of the writ, or create a lien on the premises, for the reason that the writ itself was void. To affect a party with notice, the deed, or in this case, the writ, must be such an one as in the case of a deed, the law authorizes to be registered, or in the case of a writ, it must be a writ, the issuing of which is authorized by law. The special verdict does not find that the defendants had *ac-tual* notice of the pendency of the proceedings in attach-ment. There being, then, neither actual or constructive notice, how could the rights of the defendants be affected by an order of the court made three years after they had acquired a valid title to the premises? No *ex parte* legis-lation, or order of the court founded upon such legislation, could, under the circumstances stated in the special ver-dict, have the effect claimed for it, viz: that of divesting an estate acquired by the defendants from Bissell, and transferring it to the plaintiff in this case. The original proceedings in attachment, then, being void, and no sub-sequent legislation, or orders of the court, having applied remedies sufficiently potent to cure those proceedings of the infirmities which beset them, it follows, that the judg-ment on the special verdict must be rendered for the de-fendants.                                    *Certified accordingly.*