ADELE L. HULBURT, Respondent, *v.* JOHN D. WALKER
et al., Appellants.

(Argued October 19, 1931; decided December 4, 1931.)

*Leo J. Rice* for Fairport National Bank and Trust Company, appellant. The plaintiff, so far as the defendant bank is concerned, is bound by her dealings with the defendant Walker. (Real Prop. Law, § 291; *Dixey* v. *Dixey,* 187 N. Y. Supp. 879; *Wood* v. *Chapin,* 13 N. Y. 509; *Strough* v. *Wilder,* 119 N. Y. 530.) Plaintiff cannot avoid her signature on the deed. (*Pimpinello* v. *Swift & Co.,* 253 N. Y. 162; *Davin* v. *Isman,* 228 N. Y. 1.) The plaintiff is estopped to deny her signature on the deed. (*Davin* v. *Isman,* 228 N. Y. 1; *Rothschild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 458.)

*Robert H. Tew* for Charles W. Christler, appellant. Plaintiff either intentionally deeded and conveyed the property or negligently affixed her signature to the deed. In either event she is estopped from denying the validity of the second mortgage. (*Pimpinello* v. *Swift & Co.,* 253 N. Y. 159; *Page* v. *Krekey,* 137 N. Y. 307; *Chapman* v. *Rose,* 56 N. Y. 137.)

*Hampton H. Halsey* for respondent. The defendants-appellants have received by their mortgages no better rights than the alleged grantee had. (*Mardon* v. *Dorthy,* 160 N. Y. 39; *Rothschild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 458.) There was no negligence on the part of plaintiff and the principle of equitable estoppel has no application. (*Rothschild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 462; *Albany County Savings Bank* v. *McCarthy,* 149 N. Y. 71; *Marden* v. *Dorthy,* 160 N. Y. 39.)

KELLOGG, J. On July 1st, 1927, in Monroe county clerk's office, there was offered for record and recorded an instrument having the form of a completed deed, purporting to convey a house and lot, in the village of Fairport, N. Y., from the plaintiff, its prior owner, to the defendant John Donald Walker. At the foot of the conveyancing clauses there was subscribed the genuine signature of the plaintiff. Following the signature there appeared a certificate of acknowledgment, subscribed by a notary public of Cook county, Ill., wherein, under the venue " State of Illinois, County of Cook, City of Chicago, ss.: " it was certified that the plaintiff, on the 21st day of June, 1927, had appeared before the notary and acknowledged that she had executed the instrument.

The trial court made this finding: " That the plaintiff never executed, or acknowledged, or delivered, or caused to be delivered the deed recorded in Monroe County Clerk's Office in Liber 1419 of Deeds, page 466." The deed so described is the instrument of conveyance to which we have referred. It also made the finding: " That the signature on the deed to defendant Walker is the real and authentic signature of the plaintiff."

The proof is overwhelming that the plaintiff never acknowledged the instrument before the Cook county notary; that she was in the city of Milwaukee from May 15th to June 23d; that she was in the city of Spokane, State of Washington, immediately following the latter date for a period of three months. The clear inference is that the defendant Walker, who visited the plaintiff in Milwaukee during the month of June, 1927, then procured her signature to the writing; that he later persuaded the notary, who never saw the plaintiff, to certify that she had appeared before him in Chicago on June 21st, 1927, and had then acknowledged the instrument.

The court, in making the finding that there was no execution and delivery of the instrument by the plaintiff to Walker, coupled the words " never executed " with

the words " or delivered," thereby indicating that
" executed " was not used in a sense to include " deliv-
ered." Thus regarded, the finding that the plaintiff
never executed the instrument, at first thought, seems
inconsistent with the finding that the signature to the
instrument was the " authentic signature " of the plain-
tiff. Likewise, the finding that the plaintiff never " deliv-
ered " the instrument may seem inconsistent with the
undisputed fact that the writing, after subscription by
the plaintiff, came into the possession of Walker, so far
as appears, by lawful means. However, it is an obvious
truth that a writing, not containing, when signed, words
essential to a conveyance, is not an instrument of con-
veyance; that if the necessary words to complete it are
afterwards inserted therein, the completed instrument is
not one which was " executed " by the signer. Thus, if
it appears in this proof that the disputed instrument,
when signed and delivered, did not contain the words of
description now exhibited thereby, obviously it is an
instrument which the plaintiff never executed or deliv-
ered. The findings would then correctly express the
facts, and the apparent inconsistencies would disappear.
We think that it clearly so appears.

According to the testimony of the plaintiff, she was
attended by Walker in the city of Milwaukee, on June
22d, 1927, and at that time executed in duplicate a
contract of sale to Walker of the premises in question.
The contract, which was placed in evidence, provides
for a sale of the house and lot "At a purchase price of
$7,000," for which Walker is to give the plaintiff his
judgment note for $7,000, payable October 1st, 1927.
The contract also contains this clause: " Whereas, the
party of the second part accepting the deed at the above
price mentioned on the above terms, agrees to deliver to
the party of the first part, his good and sufficient judg-
ment note of that date in the amount of Seven hundred
dollars ($700) due October 1st, 1927." The two notes

were then and there delivered to the plaintiff, and the plaintiff signed the contract duplicates, delivering one to Walker.

The plaintiff also testified that, on or about June 21st, 1927, in Milwaukee, she signed some writing other than the duplicate contracts. She says concerning it: " There was just one sheet, and Mr. Walker said that would hold me if anything happened to me or he. It was a plain sheet of paper with no typewriting on it at all on the back of it, and no writing above the place where I signed; there was some typewriting above where I signed the paper." The blank form, upon which the conveyance in question was written, is a paper of one sheet; it is a " white piece of paper;" there is no handwriting above the plaintiff's signature; there are upon the original form itself, several inches above the signature, the typewritten words " Subject to all restrictions of record," and further down, "Adele L. Hulburt, party of the first part."

The contract of sale states that the $700 note which Walker was to give in addition to the $7,000 note for the purchase price, was designed to be given by him for " accepting the deed at the above price mentioned on the above terms." . Walker states that the additional payment was for the present delivery of a deed; that " the extra seven hundred dollar note was for the privilege of going ahead and placing the mortgage on the property and the use of the money." The plaintiff herself says that Walker stated: " Here is another one for seven hundred dollars, I will give you, to hold this property for me until the first of October." She gave the following answer to the following question: " Q. What did you get the seven hundred dollars for? He wanted that I should hold the property and that if anything happened to him or me that would give him the property." In the absence of any proof of a trick or device practiced or any misrepresentation made by Walker, it is a reason-

able conclusion that the plaintiff voluntarily executed and delivered to Walker at or about the time she executed the duplicate contracts the additional writing referred to by her; that this writing was the disputed document; that the plaintiff had the will to sign and deliver the document in its then form.

What then of the plaintiff's statement that she did not sign a paper which looked like the disputed instrument and " nothing that looked like a deed?" The answer is that if the legal form which she signed did not contain a description of the property, she did not sign a deed, or any paper that " looked " like a deed.

No words, either penned or typewritten, which describe the property to be conveyed appear upon the convey-ancing blank itself. Typewritten words, describing the property by metes and bounds, appear upon a slip of typewriting paper, the upper edge of which is pasted to the deed, at a part thereof left blank for the insertion of a description. These words occupy eighteen lines of typewritten matter supplying an elaborate description of the property. As many as eleven different measure-ments of distance, and an equal number of compass directions, appear in the description. No man could long hold these measurements in mind. They must have been copied from some document or memorandum and placed upon the typewritten slip. Before the execution of the instrument, Walker had not been in Fairport, N. Y.; had had no recourse to the deeds conveying the property to the plaintiff; had not visited or been in communication with the Monroe county clerk's office. Walker himself says that the description was copied from a contract of sale of the property to her which the plaintiff had handed to him while on her western visit. The plaintiff, who must be believed in view of the fact that no credit may be accorded to Walker, stated she had had no papers with her which gave a description of her property. The just inference is that the description slip

had not been pasted to the instrument when the plaintiff signed, and was thereafter inserted by the defendant Walker.

It is, of course, true that no title passed by the delivery of the blank deed to Walker, and that the instrument in his hands was void. However, we are not now concerned with Walker's rights. On or about June 25th, 1927, Walker appeared in Fairport and then exhibited to the defendant Fairport National Bank and Trust Company the document in its present form, then having the printed slip, giving the description, attached thereto. He obtained a substantial loan from the bank which took from him a mortgage upon the house and lot for its security. He pursued a similar course with the defendant Christler, who advanced a substantial sum upon the faith of a second mortgage. Both of these parties were ignorant of any forgery or fraud committed by Walker. The question is not whether these persons acquired liens upon the premises from a person who had no title. Rather is it this: Is the plaintiff, the real owner of the property, estopped to dispute the validity of the mortgages?

That a person, who signs his name as a party to a blank negotiable instrument, afterwards completed by the insertion of words expressing an intent not held by the signer, is bound by its then terms, in respect to innocent third parties, is a proposition not susceptible of contradiction. The rule results, so it is very generally said, from the accepted principle that whoever signs and puts in circulation a blank negotiable instrument, impliedly confers authority upon a subsequent holder to fill in the blanks at will, and may not urge, as against innocent third persons, that the words thereafter inserted were contrary to the authorization actually given. (*Van Duzer* v. *Howell*, 21 N. Y. 531; *Redlich* v. *Doll*, 54 N. Y. 234; *Ledwich* v. *McKim*, 53 N. Y. 307; *Weyerhauser* v. *Dun*, 100 N. Y. 150.) In support of the principle

there is often quoted this statement of Lord MANSFIELD: " The indorsement of a blank note is a letter of credit for an indefinite sum." (*Russell* v. *Langstaffe*, 2 Doug. 514, 516.) This principle of implied authority does not apply to instruments, other than those which are negotiable, or quasi-negotiable by custom. (*Chauncey* v. *Arnold*, 24 N. Y. 330; *Dutchess & Columbia County R. R. Co.* v. *Mabbett*, 58 N. Y. 397; *Levy* v. *Louvre Realty Co.*, 222 N. Y. 14.) An instrument, purporting to be a mortgage, which is left blank as to the name of the payee, is absolutely void. (*Chauncey* v. *Arnold, supra*, at p. 332.) There the court said: " A transfer to a person not named, or in any way described or designated, is, unconnected with anything else, a mere nullity." However, if authority is expressly granted to fill in blank spaces left in a deed or mortgage, or if the granting of such authority be a legitimate factual inference, the grantor or mortgagor, in respect to innocent third parties, may be bound by the words inserted. (*Richards* v. *Day*, 137 N. Y. 183; *Levy* v. *Louvre Realty Co., supra; Drury* v. *Foster*, 2 Wall. [U. S.] 24; *Nelson* v. *McDonald*, 80 Wis. 605; *Phelps* v. *Sullivan*, 140 Mass. 36; *Palacios* v. *Brasher*, 18 Col. 593; *Guthrie* v. *Field*, 85 Kan. 58.)

There is another principle which must be considered. If a negotiable instrument, such as a check, complete on its face, but exhibiting blank spaces, wherein additional figures or names may readily be inserted, is signed in that condition by a drawer, and the instrument is altered by the introduction of other figures or words, the drawer may be liable to an innocent drawee, who has paid the check, because his negligence has facilitated the forgery. (*Young* v. *Grote*, 4 Bing. 253; *Gutfreund* v. *East River Nat. Bank*, 251 N. Y. 58, 62.) " This principle rests primarily on the doctrine of estoppel. If the negligence of the depositor enables the clerk to alter the check and so causes the bank to make payment on a forged order, the depositor is estopped from disputing the authority

of the banker to pay." (Per POUND, J., in *Gutfreund* v. *East River Nat. Bank, supra,* at p. 63.) The principle of implied authority, applicable to negotiable instruments, referred to in the last paragraph, renders the obligation of a party to pay an instrument according to its terms, although composed of inserted words not expressive of his intent, as absolutely valid as if made with actual authority. " But how different is the principle of estoppel. It validates no transaction whatever. It all along implies a transaction itself invalid, and a person is forbidden for equitable reasons to set up that invalidity." (Per WILDE, J., in *Swan* v. *North British Australasian Co.,* 7 H. & N. 603, 634.) It is not perceived why the principle of estoppel by negligence should not apply, in many instances of incomplete negotiable instruments, where the party signing has been held on the principle of implied authority. Certainly, if a party be negligent, in subscribing his name to a completed instrument, in which small spaces, offering an opportunity for forgery, have been left, he is equally, if not more grossly, negligent, in signing an incomplete instrument, in which more extensive blanks appear. However this may be, it is the principle of implied authority, not the principle of estoppel, which has been held to be inapplicable to cases involving non-negotiable instruments.

It has been said in several cases that the principle of estoppel by negligence, alluded to above, applies to deeds and all other non-negotiable instruments. One who signs a printed form of bond, leaving it to a justice of the peace to insert certain specified provisions, is not bound to the named obligee, in respect to words inserted by the justice, which were not authorized. (*Richards* v. *Day,* 137 N. Y. 183.) Yet in that case, EARL, J., remarked: " There might be cases of an estoppel where one who signed a paper in that way would be bound by it. But in this case no estoppel arises, as the action is between one of the original parties and the representative

of the other." In *McNeil* v. *Tenth Nat. Bank* (46 N. Y. 325, 329), RAPALLO, J., said that the principle that the vendor of a non-negotiable instrument can convey no greater title than he has, was " a truism, predicable of a simple transfer from one party to another where no other element intervenes," but that this did not apply where the rights of innocent third parties were involved. " Their rights in such cases do not · depend upon the actual title or authority of the party with whom they deal directly, but are derived from the act of the real owner, which precludes him from disputing, as against them, the existence of the title or · power which, through negligence or mistaken confidence he caused or allowed to appear to be vested in the party making the conveyance." Of a person who signed a non-negotiable instrument of guaranty it was said by O'BRIEN, J., in *Page* v. *Krekey* (137 N. Y. 307, 312), that " if he actually signed the paper, though procured to do it by fraud, and is chargeable with negligence, he is liable to an innocent party who acted to his prejudice upon the faith of the instrument." In *Swan* v. *North British Australasian Co.* (*supra*), WILDE, J., said that " it is difficult to see why, if a man is restrained or estopped from repudiating a parol transfer, he should be less restrained by the same estoppel from repudiating a solemn transfer by deed " (p. 635). On the appeal in that case (2 H. & C. 175), MELLOR, J., agreed that a grantor, signing a deed with unfilled blanks, might be bound by words subsequently inserted; " Not by validating a void deed, as was supposed on the argument, but by holding that the parties shall not be permitted to aver, against equity and good faith the invalidity of a deed which either by words or conduct they have asserted to be valid, and upon which others have acted."

In *Pence* v. *Arbuckle* (22 Minn. 417) these facts were considered: Husband and wife signed a blank form of warranty deed, containing the usual printed matter.

The deed was blank in respect to the names of the parties, the description of the property to be conveyed, and the consideration payable. They acknowledged the deed in its then form before a proper officer, who attached his certificate of acknowledgment, which was dated August 24th, 1857. They then delivered the deed to an agent for the purpose of enabling him to make a sale of certain property. The agent filled up the blanks; inserted his own name as grantee; executed and delivered the instrument to an innocent third person; and received for himself the consideration paid. The ground of the decision upholding the conveyance was estoppel, the court saying: " The signature and certificate were a continuing representation that the instrument, in whatever condition it might be when presented to anyone, was in that condition on August 24, 1857 " (p. 420).

The general principle of estoppel, applying to deeds or other instruments, containing blanks when signed, which prevents the signer from disputing the words subsequently inserted, was thus stated by WILDE, J., in the case cited (*Swan* v. *North British Australasian Co.*, 7 H. & N. p. 623): " That if he has led others into the belief of a certain state of facts by conduct of culpable neglect calculated to have that result, and they have acted on that belief to their prejudice, he shall not be heard afterwards, as against such persons, to show that state of facts did not exist." In commenting upon this statement, BLACKBURN, J., on the appeal (*Swan* v. *North British Australasian Co.*, 2 H. & C. 175) said: " This is very nearly right, but in my opinion not quite, as he omits to qualify it by saying that the neglect must be in the transaction itself, and be the proximate cause of the leading the party into that mistake; and, also, as I think, that it must be the neglect of some duty that is owing to the person led into that belief, or, what comes to the same thing, to the general public of whom the person is one, and not merely neglect of what would be

prudent in respect to the party himself, or even of some duty owing to third persons, with whom those seeking to set up the estoppel are not privy; and these distinctions make in the present case all the difference" (p. 182).

We agree with the opinion of BLACKBURN, J., to the extent of his statement that mere carelessness, as commonly understood, is not sufficient; there must be " the neglect of some duty that is owing to the person led into that belief; or, what comes to the same thing, to the general public of whom the person is one;" and " not merely neglect of what would be prudent in respect to the party himself." There is negligence only where no care is exercised to avert a risk to others which reasonably should be apprehended. " The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." (Per CARDOZO, J., in *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339, 344.)

Notes and checks are intended for transfer; instruments of a similar nature, such as bonds and certificates of stock, by their very form and nature, are designed to circulate freely in the channels of commerce. Instruments conveying real property are not susceptible of transfer to third persons; nor does the execution of a bond and mortgage readily suggest the thought of subsequent transfer. " But there is no such implication in the delivery of a bond and mortgage. The suggestion of a future transfer is not immanent in the transaction." (Per CARDOZO, J., in *People's Trust Co.* v. *Smith*, 215 N. Y. 488, 494.) An injury to third persons through careless execution of negotiable instruments or of documents transferring them, should reasonably be apprehended by those who consign them to the commercial stream. A similar apprehension, in the case of instruments not ordinarily intended for use by third persons, would less readily come to mind. Consciousness of peril to strangers, in the careless execution of instruments of the negotiable

type, would induce the reasonably prudent man to exercise attentive care, that the peril might be avoided. In the case of instruments of the non-negotiable type, the risk involved is less easily perceived; correspondingly the duty of care less frequently arises. This distinction was the governing thought in such cases as *People's Trust Co.* v. *Smith* (*supra*) and *Westlake* v. *Dunn* (184 Mass. 260). In the latter case a landowner had signed a deed which was blank as to the name of the grantee. He temporarily intrusted it to a friend that he might exhibit it to a third person, a prospective buyer. The friend filled in his own name as grantee, and mortgaged the land to a bank which loaned him money. It was held that the owner was not estopped by his carelessness from asserting the invalidity of the instrument. We conclude, therefore, that, while negligence may serve, in the case of non-negotiable instruments, to preclude an attack upon their validity, more persuasive evidence, to establish the duty of care and its breach, may be required in a situation involving instruments of that character than in one involving instruments which are classed as negotiable.

The plaintiff, in signing a blank form of warranty deed, which contained no description of the land to be conveyed, was certainly careless in the ordinary sense of that word. Whether she was guilty of negligence, as the law defines the term, depends upon the risks, arising from that act, which should reasonably have been apprehended. The case differs from *Pence* v. *Arbuckle* (*supra*) in a marked degree. There the putative grantors not merely signed and delivered a form of deed containing no words except those of the printed blank, they acknowledged before a proper officer their execution of the instrument and procured his certificate of acknowledgment to be attached thereto. The instrument, if completed by the filling of the blanks, would be in such form that it might be recorded. In this instance, if the plaintiff had given thought to

the matter, her reflections might well have assumed this form: This instrument, since it lacks a description, is a nullity. It may be made complete through forgery. Even then, no certificate of acknowledgment is appended thereto. In order that third persons may be induced to buy from the putative grantee, not only must a forged description be inserted, but a notary public must be procured to sign a false certificate of acknowledgment thereto, so that the deed may be rendered eligible for record. There is no likelihood of damage to third persons if I sign the instrument. We think that, in view of the many obstacles to be overcome by the putative grantee, the defendant Walker, before he might become armed with a completed and acknowledged deed with which to negotiate a loan by means of a mortgage, the plaintiff might reasonably have concluded that no risk to others was involved in signing an instrument, containing no description, and, therefore, conveying no title, when delivered to Walker. At least, we are of the opinion that the plaintiff was not, as a matter of law, guilty of negligence, and that the decision by the trial judge that she was not thus guilty, as a matter of fact, must stand.

The judgment should be affirmed, with costs.

CRANE, J. (concurring). I concur in the result on the ground that the mortgagees were put on notice by the form of the deed which came into the possession of their agent.

CARDOZO, Ch. J., POUND, LEHMAN, O'BRIEN and HUBBS, JJ., concur with KELLOGG, J.; CRANE, J., concurs in result in memorandum.

Judgment affirmed.