UNION TRUST COMPANY OF ROCHESTER, Appellant, Impleaded with A. WILLIAM BLACK, Plaintiff, *v.* HELEN C. ALLEN and Others, Defendants, Impleaded with JOSEPH BEVACQUA and Another, Respondents.*

Fourth Department, January 17, 1934.

* See 147 Misc. 885.

*George A. Carnahan*, for the appellant.

*Thomas L. Toan*, for the respondent Joseph Bevacqua.

*Don C. Allen*, respondent, in person.

SEARS, P. J. On October 15, 1926, the defendants Frank Bonnano and Mary Bonnano, his wife, and Ralph Pelligra and Petrina Pelligra, his wife, being the owners of a certain property in Rochester, mortgaged it to Oscar Feyder for $9,220. The mortgage was collateral to a bond executed by the four owners of the property. The mortgage was inferior to a first mortgage given to secure the payment of $16,000. On March 17, 1927, the four owners of the property just mentioned entered into a written contract of exchange with the defendant Joseph Bevacqua according to which Bonnano and Pelligra and their wives were to convey to Bevacqua the property already referred to and Bevacqua was to convey to Bonnano and Pelligra and their wives a certain other parcel of land. Both pieces of property were mortgaged and the written contract provided that Bonnano and Pelligra and their wives were to assume the payment of the mortgages on the property to be conveyed to them by Bevacqua, but the contract provided that Bevacqua was to take the property to be conveyed to him subject to the two mortgages already mentioned. No provision for the assumption of the payment of these mortgages by Bevacqua was contained in the contract. The defendant Don C. Allen acted as Bevacqua's attorney in closing this transaction. The deed delivered by Bonnano and Pelligra and their wives contained a clause to the effect not only that the property was subject to the two mortgages already referred to but that the grantee (Bevacqua) assumed their payment. This deviation from the contract is the source of this lawsuit. The presence of the clause was not observed by Allen when the deed was delivered, nor did he learn of its presence in the deed until it was later discovered by Bevacqua. The defendant Bevacqua did not himself see the deed until about July 22, 1927, when he discovered the mistake. In the meantime, on May twenty-sixth or twenty-seventh, the plaintiff Black became the owner of the second mortgage through mesne assignments from Feyder,

the original mortgagee. On May 27, 1927, Bevacqua, at the request of Black, executed and delivered to Black a certificate to the effect that there were no defenses to the bond and mortgage and that the mortgage was a valid lien on the property. When Bevacqua discovered the assumption clause on July twenty-second, he at once stated to Allen that he repudiated it and directed Allen to have the error corrected. Bevacqua caused his grantors to be notified of the mistake and requested rectification. Bonnano and Pelligra and their wives, however, refused to make the correction. Allen did not wish his mistake in this matter to become known, and Bevacqua and Allen entered into an agreement that Bevacqua should convey the property to Allen, who would assume the payment of the mortgages and also pay Bevacqua a substantial consideration. This arrangement followed a conversation between Bevacqua and Allen, in which Allen said: " Will it be all right if I take it [the property] over myself and assume the mortgages?" Bevacqua replied: " It is all right with me, but I will never be responsible for them." Bevacqua conveyed the property to Allen July 26, 1927, by a deed which contained a clause to the effect that the grantee assumed the payment of the second mortgage. On March 27, 1928, Allen conveyed the property to defendants Gaspara and Frank Marasco by a deed which contained a similar clause to the effect that the grantees assumed the payment of the second mortgage. The defendant Helen C. Allen, the wife of Don C. Allen, afterwards acquired title to the property. On November 4, 1931, Black assigned the second mortgage to the plaintiff trust company as collateral security for a pre-existing indebtedness upon the surrender by the trust company to Black of other valuable security. At the time of this assignment Don C. Allen, although he was not then the owner of the mortgaged property, title being in his wife, gave the trust company a certificate similar to the one given by Bevacqua to Black when the mortgage was assigned to Black. Neither certificate contained any statement as to any assumption of the mortgage indebtedness by any grantee of the property. It also appears that when Black took the assignment he knew of the assumption clause in the deed to Bevacqua and made inquiries as to Bevacqua's credit and relied on his assumption. He, however, made no inquiries as to the assumption or Bevacqua's credit of Bevacqua himself. Before Black assigned the mortgage to the trust company, Allen had informed Black of the true situation in respect to the assumption by Bevacqua. When the trust company took the assignment from Black its officers similarly had knowledge of the assumptions of the mortgage indebtedness as the clauses appeared in the records of the deeds

to Bevacqua and to Allen, and the trust company in taking the assignment from Black relied on the credit of Bevacqua and Allen. Black did not, so far as appears, disclose to the trust company what Allen had told him. This action was brought to foreclose the second mortgage, and a deficiency judgment was demanded against Bevacqua and Don C. Allen. Bevacqua by answer demanded a reformation of the Bonnano-Pelligra deed by striking out his assumption. A sale of the mortgaged premises has been had pursuant to a judgment in this action and a deficiency resulted amounting to $6,744.70 on the date of sale, February 28, 1933. The court at Special Term denied the plaintiffs' demand for a judgment against Bevacqua and Allen for the deficiency and granted Bevacqua a judgment reforming the deed to him by striking out the assumption clause. The plaintiff trust company alone has appealed.

The assumption clause in a deed " is, properly speaking, no part of the grant. It is a collateral undertaking, personal in its nature, not relating to the land." Like any contract to be enforcible, there must be a meeting of the minds of the contracting parties, here the grantor and grantee. (*Blass* v. *Terry*, 156 N. Y. 122.) As between Bonnano and the other grantors and Bevacqua, there was no meeting of the minds upon the assumption of the mortgage. The form of the preceding contract is proof of this. The assumption clause inserted in the deed was wholly ineffective as between the parties to the instrument. The then owner of the mortgage had no greater right to enforce the assumption than had the grantors. (*Drury* v. *Hayden*, 111 U. S. 223; *Arnstein* v. *Bernstein*, 127 App. Div. 550.) In general, one who takes an assignment of a chose in action, non-negotiable, takes it subject to all equities good against the assignor at the time of the assignment. (*Bush* v. *Lathrop*, 22 N. Y. 535; *Merchants' Bank* v. *Weill*, 163 id. 486; *Kommel* v. *Herb-Gner Const. Co.*, 256 id. 333.) The general rule is subject to exception where the person attempting to assert the equity has intentionally or negligently so acted as to justify reliance on a situation inconsistent with the assertion of the equity. (*Hulburt* v. *Walker*, 258 N. Y. 8.) As to Black, no personal conduct of Bevacqua caused him to rely upon the assumption clause in the deed to Bevacqua. At the time Bevacqua executed the estoppel certificate he was ignorant of the inclusion of the assumption clause in the deed to him. As to Bevacqua's attorney, Allen, there was, perhaps, originally, negligence in his acceptance of the deed to Bevacqua without discovering the assumption clause. As to such negligence, Allen would be responsible only to Bevacqua.

The recording of the deed to Bevacqua containing the assumption clause merely furnished evidence of a contract between grantors and grantee. Similarly, the inclusion of an assumption clause in the deed from Bevacqua to Allen was as to Bevacqua but evidence of the contract of assumption by Bevacqua or of its affirmation. (*Dale* v. *Akin*, [Tex. Civ. App.] 27 S. W. [2d] 327.) The existence of a contract of which these clauses in the records of the deeds furnish evidence is fully overcome by the proof of the circumstances surrounding the entire transaction. The inclusion of the assumption clause in the deed from Bevacqua to Allen does not conclusively establish affirmation although it is evidence of it. Ratification, in the sense of an affirmation of the contract and a waiver of the defense to it, is a matter of intention. (*Pryor* v. *Foster*, 130 N. Y. 171; *Potts* v. *Lambie*, 65 Misc. 334.) It clearly appears that Bevacqua never intended to affirm. Bevacqua did not say to Allen, " I am content to recognize my assumption included in the deed from Bonnano if you will assume such obligation." What he said, rather, was equivalent to this, " You can protect me if you like, but as for me I'll never be responsible for the mortgage." Here was a reassertion of a valid contention and an attempt to protect himself.

The claim of the trust company against Bevacqua is no better than the claim of Black. By Black's assignment of the mortgage to the trust company it took merely the rights of its assignor.

As to the trust company's claim against Allen, however, Allen's later conduct is material and is sufficient to constitute an estoppel. Ordinarily, when one executes a mortgage or assumes a mortgage obligation, such mortgagor or person assuming the obligation has in mind the obligation to the mortgagee alone. The thought of a future transfer of the mortgage is not immanent in the creation of a mortgage obligation and negligence of an obliger does not give a new right to a transferee of the mortgage. (*People's Trust Co.* v. *Smith*, 215 N. Y. 488; *Hulburt* v. *Walker, supra.*) A different aspect from the usual one, however, occurs in this case. When Allen was requested to sign an estoppel certificate he had full knowledge of the defect in the assumption by Bevacqua which appeared on the records. When he was asked to execute the estoppel certificate, he also had actual knowledge that there was to be a transfer of the mortgage obligation. The transfer was not a vague possibility. It was a certainty. The defect in the assumption clauses had very recently been in his mind, for he had spoken of it to Black. When, therefore, he knew that the trust company was about to become the owner of the mortgage indebtedness, good faith required him to speak of the defects in Bevacqua's

assumption and in his own (*Vrooman* v. *Turner*, 69 N. Y. 280), or take the consequences of the trust company's acquisition of the apparent claim against himself without such knowledge. Having failed to speak when speaking was indicated by the principles of fair dealing, he cannot be heard to speak now. On the doctrine of estoppel, therefore, the judgment must be reversed so far as the defendant Allen is concerned.

The judgment should be affirmed as to the defendant Bevacqua, with costs, and judgment should be reversed on the law as to the defendant Don C. Allen, with costs, and judgment granted to the plaintiff trust company against the defendant Don C. Allen for the sum of $6,744.70, with interest thereon from February 28, 1933, with costs.

All concur, except THOMPSON, J., who dissents and votes for affirmance in a memorandum: In my opinion the defendant Allen at the time he gave the estoppel certificate truthfully answered the questions which were submitted to him, and I am unable to see how he can be charged with bad faith.

Judgment as to defendant Bevacqua affirmed, with costs, and as to defendant Don C. Allen reversed on the law, with costs, and judgment granted against him in favor of plaintiff Union Trust Company of Rochester for the amount of the deficiency, with costs.